## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VELIBOR DIVKOVIC.<br><br>Plaintiff,<br><br>vs.<br><br>THE HERSHEY COMPANY.<br>KRISTY UMBERGER, INDIVIDUAL<br>JOHN DOE 1, INDIVIDUAL<br>JOHN DOE 2, INDIVIDUAL<br><br>Defendants. | Case No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Velibor Divkovic (hereinafter, "Plaintiff") moves the Court for entry of judgment in his favor against the named Defendants and in support of such Complaint avers as follows:

### PARTIES, JURISDICTION AND VENUE

1.    This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to federal law specifically, the Americans with Disabilities Act of 2008 ("ADA") the Family Medical leave Act ("FMLA") and the Genetic Information Nondiscrimination Act ("GINA"). Moreover, this

Honorable Court has jurisdiction over Plaintiff's state law claims to the extent that he pleads them pursuant to 28 U.S.C. §1367.

2.    Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

3.    Plaintiff brings this action against his former employer, The Hershey Company, ("Defendant" or "Hershey"). Hershey is a Pennsylvania company located at 19 E. Chocolate Avenue., Hershey, Pennsylvania 17033.

4.    Defendant Kristy Umberger ("Ms. Umberger" or "Individual Defendant 1") is an adult female and upon information and belief, resides within in the Commonwealth of Pennsylvania. Ms. Umberger is employed by Hershey as Human Resources. Ms. Umberger is in the supervisory line of succession relative to the Plaintiff and participates in the decisions to enforce discipline and/or to terminate employees including the Plaintiff.

5.    Defendant John Doe ("Mr. Doe" or "Individual Defendant 2") is an adult male and upon information and belief, resides within in the Commonwealth of Pennsylvania. Mr. Doe is employed by Hershey as Corporate Relations. Mr. Doe is in the supervisory line of succession relative to the Plaintiff and participates in the decisions to enforce discipline and/or to terminate employees including the Plaintiff.

6.     Defendant John Doe 2 ("Mr. Doe 2" or "Individual Defendant 3") is an adult male and upon information and belief, resides within in the Commonwealth of Pennsylvania. Mr. Doe 2 is employed by Hershey as Corporate Relations. Mr. Doe 2 is in the supervisory line of succession relative to the Plaintiff and participates in the decisions to enforce discipline and/or to terminate employees including the Plaintiff

7.     Plaintiff is an adult male who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania, Dauphin County, and was employed by Hershey.

## UNDERLYING FACTS

8.     Plaintiff is a 34-year-old male who worked for Hershey as Production Operator in its Reese's Plant from September 18, 2017, to May 25, 2021.

9.     Due to Plaintiff's Gout and flare ups Plaintiff put in for FMLA and it was certified by his doctor and approved by Hershey on or about March 27, 2019.

10.    Plaintiff's FMLA was re-certified and approved on August 27, 2019.

11.    Plaintiff's FMLA was re-certified and sent to Hershey on September 6, 2019.

12.    Plaintiff's FMLA was re-certified with added information and was renewed and approved on March 2, 2010.

13.    Plaintiff's FMLA was re-certified and approved on September 22, 2019.

14.    Plaintiff's FMLA was re-certified and approved on October 13, 2020.

15.    On October 30, 2020, Plaintiff provided a doctor's note regarding his anxiety and depression as well as other medical issues seeking workplace accommodations for the same.

16.    Plaintiff was put on 40-hour restriction due to ongoing medical and mental health issues and certified by his doctor. It was approved on February 12, 2021.

17.    Plaintiff's FMLA was certified and approved for FMLA for 1-4 absences a week with each absence lasting 1-12 hours in length. Approval effective January 22, 2021, to July 22, 2021.

18.    On or about May 18, 2021, Plaintiff was called to the office by the scheduling working foreman, Heather Groen. Plaintiff was told that Human Resources ("HR"), Ms. Umberger, wanted to talk to him at 4pm. Plaintiff went to the HR office at 4pm. Plaintiff was told that he would be having a meeting with Hershey's Corporate Relations Mr. Doe, and herself through video zoom. Thereafter, Ms. Umberger proceeded to turn the video chat on with Two (2) people (John Doe 1 & 2) from Corporate Relations. They introduced themselves and Plaintiff was told that they have some questions regarding his FMLA leave.

19.    At the beginning Plaintiff was asked questions regarding how he filed for FMLA, where does he file for FMLA, who does he talk to, and basically the process of FMLA leave.

20.   Plaintiff answered to the best of his knowledge and followed all the steps he was supposed to follow per Company rules.

21.   The person from corporate relations (Mr. Doe 1) then started asking Plaintiff questions about his FMLA leave. He started also asking him questions about his FMLA for spouse leave for his wife. Plaintiff's wife had an abnormal uterus blocking condition and the Plaintiff took Intermittent Leave FMLA to assist his wife in her treatments at Towson, Maryland as well as home-based treatments for invitro fertilization. This FMLA was approved on or about February 10, 2021.

22.   Plaintiff answered questions to the best of his ability even though they started asking questions which invaded his privacy and that of his wife.

23.   Mr. Doe's 1 & 2 proceeded to ask in-depth questions about his wife's health conditions, how many medications she was taking, how long does it take to mix vials/dosage and additional questions about invitro-fertilization. Mr. Doe 1 then wanted to know exactly how long it takes Plaintiff to do the process. How long it takes to mix 2 different injections. Mr. Doe 1 then inquired about his wife's appointments and the duration of her appointments.

24.   Plaintiff answered him because he felt under duress to answer all the questions.

25.    The Defendants then kept trying to go back to the same questions he asked before but wording it differently. Plaintiff told them that he had already answered all the questions and stated that he felt he was being harassed.

26.    Plaintiff then told Ms. Umberger that they could not question him about the invitro fertilization questions as that was private.

27.    Plaintiff was then advised by Mr. Doe 1 that "this is not going anywhere" and he proceeded to tell him that he was being investigated for "Misuse of approved FMLA" and that he would be suspended until the investigation is completed. Plaintiff then asked to talk to his boss. Mr. Doe 1 stated that he would let his boss know that.

28.    The meeting ended with Ms. Umberger telling Plaintiff to hand over his Badge and wait until he was escorted off the property by the Kit Kat Production Manager. Plaintiff left the property and went home.

29.    On May 19, 2021, Plaintiff received a call in the afternoon by another corporate relations representative (female/name unknown). Plaintiff reported the actions of the Defendants telling the representative his displeasure about how he and his family were treated and how this was handled especially the private health questions. The Corporate representative apologized for Mr. Doe 1's behavior and Plaintiff was told she would have a "talk" with him about how he handled the meeting the day before. She also advised Plaintiff that "it looked good" answering

all the questions even though she admitted that they were uncomfortable but "it helped her" telling his side of the story.

30.    Plaintiff was told that he would receive a call in a day or two with the final resolution of the investigation.

31.    On May 25, 2021, Plaintiff was contacted by corporate relations (Name unknown – may be Jennifer) regarding not receiving any update or news about his status. Plaintiff was told that the HR specialist in the Reese's plant was not available due to vacation and that she did not know, resulting in the delay.

32.    Plaintiff subsequently received a call from Ms. Umberger a few hours after he called seeking a status advising him that he had been terminated by the company due to Misuse of approved FMLA leave.

33.    Plaintiff asked if he could have a written paper about his termination and the reason and was told it would be mailed to him.

34.    On May 27, 2021, a letter of termination was sent to Plaintiff stating that he had been terminated effective May 25, 2021, due to misuse of approved FMLA leave.

35.    Furthermore, Plaintiff avers that he was treated differently from non-disabled employees as to his termination.

36.    Specifically, Michael S. was caught in the elevator during a sexual act with a temp agency employee and all he received was a few days suspension. Further,

another incidence of sexual misconduct occurred and only a suspension was handed down.

37.    Further, another non-disabled employee, Walter G. who was a "back-up Supervisor" did not respond to calls, came in late to work through a backdoor and then attempted to go into the system and change the clock in time to show he was not late. He only received a suspension.

38.    Plaintiff was never written up at work and was never suspended but was terminated for allegedly misusing FMLA time (which he did not).

39.    Subsequently, Plaintiff filed a Dually Filed Charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on July 7, 2021, docketed as 530-2021-04124 which was dismissed by the EEOC on September 27, 2021 (**see Exhibit A**).

40.    The Defendants' actions or inaction are of a continuing nature thus they fall under the doctrine of a continuing violation theory.

41.     Hershey is responsible/liable for the actions of its agents under a theory of *Respondeat Superior.*

## COUNT 1
## PHRA DISABILITY DISCRIMINATION
## ALL DEFENDANTS

42.    Plaintiff incorporates herein the previous averments as if fully set forth.

43.     The Plaintiff is a qualified individual with a disability under the PHRA due to his Gout and flare-ups, anxiety, depression, and Defendants' notice of the same.

44.     The Plaintiff had a record of disability and/or was regarded as disabled by the Defendants.

45.     The PHRA prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace.

46.     Plaintiff requested an accommodation pursuant to state and federal law, i.e., medical leave, intermittent due to treating for Gout, anxiety, and depression.

47.     Defendant failed to accommodate Plaintiff's disability and instead, it disciplined and terminated him when he sought leave related to his disability.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 2
## PHRA DISABILITY-HOSTILE WORK ENVIRONMENT
## ALL DEFENDANTS

48.     Plaintiff incorporates herein the previous averments as if fully set forth.

49.     The Plaintiff avers that he is a qualified individual with a disability under the PHRA due to his Gout, flare-ups, anxiety and depression, and Defendant's notice

of the same. Additionally, the Plaintiff has been under a physician's care for his disabilities since he was diagnosed.

50.    The Plaintiff was subject to unwelcomed harassment after he sought disability accommodations from 2020-2021 as more fully noted above.

51.    Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment because the Plaintiff was harassed due to his medical and mental health conditions when his supervisor, human resources department and corporate relations claimed he misused his FMLA leave and engaged in an intrusion of he and his wife's private medical conditions.

52.    Defendant knew, or reasonably should have known of the harassment when the Plaintiff reported the same in May 2021 to corporate relations and among other supervisors, human resources and corporate relations and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining, and berating him due to his conditions and then firing him.

53.    The fact that the Plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability for his claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but

not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

**COUNT 3**
**PHRA DISABILITY RETALIATION**
**ALL DEFENDANTS**

54.    Plaintiff incorporates herein the previous averments as if fully set forth.

55.    The PHRA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

56.    The Plaintiff's requests for an accommodation in the workplace constituted "protected activity" pursuant to state and federal law.

57.    Defendant retaliated against the Plaintiff on account of his protected activity when it disciplined him and fired him after he sought medical leave accommodations related to his disability and after he opposed harassment and bullying by corporate representatives.

58.    Furthermore, Plaintiff avers that the Defendants' purported basis to discipline him (e.g., misuse of FMLA) is false and erroneous and a pretext for underlying invidious reasons.

59.    As a result, the Plaintiff avers that the Defendant retaliated against him on account of his protected activity by imposing discipline and discharging him without justification.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

### COUNT 4
### ADA DISABILITY DISCRIMINATION
### CORPORATE DEFENDANT ONLY

60.    Plaintiff incorporates herein the previous averments as if fully set forth.

61.    The Plaintiff is a qualified individual with a disability under the PHRA due to his Gout, Flare-ups, anxiety, depression, and Defendants' notice of the same.

62.    The Plaintiff had a record of disability and/or was regarded as disabled by the Defendants.

63.    The ADA prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace.

64.    Plaintiff requested an accommodation pursuant to state and federal law, i.e., medical leave, intermittent due to treating for Gout, anxiety, and depression.

65.    Defendant failed to accommodate Plaintiff's disability and instead, it disciplined and fired him when he sought leave for medical reasons related to his disability.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and punitive relief as well as all reasonable attorney's fees and costs of litigation.

**COUNT 5**
**ADA DISABILITY-HOSTILE WORK ENVIRONMENT**
**CORPORATE DEFENDANT ONLY**

66.    Plaintiff incorporates herein the previous averments as if fully set forth.

67.    The Plaintiff avers that he is a qualified individual with a disability under the ADA due to his Gout, Flare-ups, anxiety and depression and Defendant's notice of the same. Additionally, the Plaintiff has been under a physician's care for his disabilities since he was diagnosed.

68.    The Plaintiff was subject to unwelcomed harassment after he sought disability accommodations from 2020-2021.

69.    Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment because the Plaintiff was harassed due to his medical and mental

health conditions when his supervisor, human resources and corporate relations would demean and bully him claiming he misused his FMLA.

70.    Defendant knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining, and berating him due to his conditions, then firing him.

71.    The fact that the Plaintiff's supervisors were perpetrators of the harassment and discrimination entitles the Plaintiff to strict liability for his claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and punitive relief as well as all reasonable attorney's fees and costs of litigation.

## COUNT 6
## ADA DISABILITY RETALIATION
## CORPORATE DEFENDANT ONLY

72.    Plaintiff incorporates herein the previous averments as if fully set forth.

73.    The ADA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

74.    The Plaintiff's requests for an accommodation in the workplace constituted "protected activity" pursuant to state and federal law.

75.    Defendant retaliated against the Plaintiff on account of his protected activity when it disciplined him after he sought medical leave accommodations related to his disability and after he opposed harassment and bullying.

76.    Furthermore, Plaintiff avers that the Defendant's purported basis to discipline him (e.g., misuse of FMLA) is false and erroneous and a pretext for underlying invidious reasons.

77.    As a result, the Plaintiff avers that the Defendants retaliated against him on account of his protected activity by imposing discipline and discharging him without justification.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and punitive relief as well as all reasonable attorney's fees and costs of litigation.

**COUNT 7**
**FAMILY AND MEDICAL LEAVE ACT INTERFERENCE**
**ALL DEFENDANTS**

78.    Plaintiff incorporates herein the previous averments as if fully set forth.

79.   During Plaintiff's employment with Defendant, Plaintiff sought FMLA when he experienced Gout, Flare-ups, anxiety, depression, and the need to care for his wife.

80.   Plaintiff's health conditions and those of his wife was also exacerbated by hostilities he experienced at work after reporting said harassment to his direct supervisors as more fully noted herein.

81.   Plaintiff's medical conditions and those of his wife required treatment by a health care provider.

82.   Plaintiff's medical conditions and those of his wife constitute a "serious health conditions" as that term is defined under and pursuant to the FMLA.

83.   Defendants were provided with sufficient information to reasonably verify that Plaintiff and his wife required treatment by a health care provider for his and her serious health conditions.

84.   At all relevant times, Plaintiff had been employed by the Defendants for at least 12 months and at least 1,250 hours of service during the 12-month period immediately preceding the notice of his need for FMLA.

85.   At all relevant times, the Defendants employed 50 or more employees within 75 miles of Plaintiff's worksite for a period of 20 or more calendar work weeks.

86.    Accordingly, at all times material to this Complaint, the Defendants were "covered employers" within the meaning of the FMLA and Plaintiff was an "eligible employee" within the meaning of the FMLA.

87.    Plaintiff's medical leave in 2020-2021 were protected absences under the FMLA and its regulations.

88.    Instead, Defendants disciplined and fired Plaintiff after he sought leave and workplace accommodations.

89.    The Defendants were required to communicate with the Plaintiff regarding his rights under the FMLA including but not limited to the provision of an individualized notice to employees regarding FMLA rights and obligations.

90.    From 2020-2021, Plaintiff provided proper notice of his need for FMLA leave on account of his and his wife's serious medical conditions.

91.    Defendants failed to provide Plaintiff his entitled FMLA leave of absence without discrimination, harassment, and retaliation.

92.    Instead, Defendants interfered with Plaintiff's FMLA once he made it known of his need for leave and workplace accommodations, and ultimately, discharged Plaintiff from his job.

93.    Defendants possessed no good faith legitimate basis for its actions, or discharge of Plaintiff's employment.

94.    The discipline and discharge of the Plaintiff's position in conjunction with his request for FMLA constitutes an adverse employment action.

95.    Defendants interfered with Plaintiff's rights under the FMLA in one or more ways including but not limited to the following:

    a.    Discouraging Plaintiff from utilizing FMLA, including but not limited to disciplining him and discharging him after he sought assistance for his and his wife's serious medical conditions.

96.    Defendants' acts and omissions and conduct as more fully described above were knowing and willful.

97.    Defendants' acts and omissions, as more fully described above, were performed in bad faith and without a reasonable basis, thereby rendering Defendants liable for liquidated damages pursuant to the FMLA, and claim is made, therefore.

98.    As a result of Defendants' violations of the FMLA, as more fully described above, Plaintiff is entitled to back pay and wages together with interest thereon pursuant to the FMLA, and claim is made, therefore.

99.    As a result of Defendants' violations of the FMLA, as more fully described above, Plaintiff is entitled to be reinstated to his position, or to front pay and benefits pursuant to the FMLA, and claim is made, therefore.

100.        Plaintiff is further entitled to recover his attorney fees, expert witness

fees, and other costs related to the instant matter pursuant to the FMLA, and claim

is made, therefore.

### COUNT 8
### FAMILY AND MEDICAL LEAVE ACT RETALIATION
### ALL DEFENDANTS

101.        Plaintiff incorporates herein the previous averments as if fully set forth.

102.        From 2020-2021, Plaintiff attempted to exercise his rights under

FMLA.

103.        The FMLA and regulations promulgated thereunder prevent an

employer from discriminating against employees who have exercised rights

and/or taken FMLA leave. 29 U.S.C. §2615(a) (2); 29 C.F.R. §825.220(c).

104.        Defendants willfully violated the FMLA, and regulations promulgated

thereunder in that it disciplined and discharged, the Plaintiff because of his

attempt to use FMLA leave, including but not limited to the following:

a. Unreasonably withholding approval and/or authorization of Plaintiff's

request for medical leave.

b. Failing to effectively communicate with Plaintiff regarding the status of

his FMLA requests and need for treatment for he and his wife.

c. Failing to follow normal procedures with respect to the processing of a

leave request pursuant to the FMLA.

d.  Failing to provide timely written notices to Plaintiff as required by the FMLA and regulations promulgated thereunder.

e.  Discouraging Plaintiff from utilizing FMLA, including but not limited to disciplining and discharging him after requests for assistance.

f.  Denying Plaintiff's reinstatement and/or restoration that Plaintiff would have been entitled to under the FMLA.

g.  Inquiring about private medical information which was not necessary during the scope of a meeting regarding Plaintiff's use of FMLA.

h.  Discharging Plaintiff's employment without cause.

i.  Discharging Plaintiff's employment without cause to deprive him of FMLA leave for treatment and that of his wife.

j.  Denying Plaintiff's health and other fringe benefits to which he was entitled throughout the duration of his FMLA leave.

105.    Defendants willfully violated Section 29 U.S.C. §2615(a)(2) in that it discharged, discriminated, and/or retaliated against Plaintiff as a result of his use of FMLA leave or attempt to use FMLA leave, as more fully set forth above.

106.    Defendants' acts and omissions, and conduct as more fully described above, were knowing and willful.

107.    Defendants' acts and omissions, as more fully described above, were performed in bad faith and without a reasonable basis thereby rendering

Defendants liable for liquidated damages pursuant to the FMLA, and claim is made therefor.

108.    As a result of Defendants' violation of the FMLA, as more fully described above, Plaintiff is entitled to back pay and wages together with interest thereon pursuant to the FMLA, and claim is made therefor.

109.    As a result of Defendants' violations of the FMLA, as more fully described above, Plaintiff is entitled to be reinstated to his position, or to front pay and benefits, pursuant to the FMLA, and claim is made therefor.

110.    Plaintiff is further entitled to recover his attorney fees, expert witness fees, and other costs related to the instant matter pursuant to the FMLA, and claim is made therefor.

111.    The suspension and discharge of Plaintiff's employment constitutes an adverse employment action.

## COUNT 9
## GENETIC INFORMATION NONDISCRIMINATION ACT

112.   Plaintiff incorporates herein the previous averments as if fully set forth.

113.   More than thirty days prior to the institution of this lawsuit, Plaintiff filed a charge with the EEOC alleging violations of GINA, the ADA, and Title VII by Defendants. All conditions precedent to the institution of this lawsuit have been fulfilled.

114.    Since at least May 18, 2021, Defendants have engaged in a pattern or practice of employment practices made unlawful by GINA. Specifically, Hershey requests family medical history during medical leave meeting(s) in violation of, but not limited to, Sections 201(3), 201(4), and 202(b) of GINA, 42 U.S.C. §2000ff (3), §2000ff(4), and §2000ff-1(b).

115.    Hershey violated Section 102 of the ADA, 42 U.S.C. §12112, by terminating The Plaintiff because of his record of disability and because it perceived him to be disabled, and after failing to provide him a reasonable accommodation, as more fully noted in his Complaint herein.

116.    Furthermore, and specifically, during the meeting held on or about May 18, 2021, Defendants engaged the Plaintiff is private discussions about his medical issues and his participation in invitro-fertilization with his spouse as more fully described herein.

117.    Since at least May 18, 2021, Hershey failed, in violation of Section 207(a) of GINA, 42 U.S.C. § 2000ff-6(a), which incorporates by reference Section 711 of Title VII, 42 U.S.C. §2000e-10, to post and keep posted notices that have been prepared or approved by the EEOC setting forth excerpts from or summaries of the pertinent provisions of GINA and information pertinent to the filing of a charge or complaint.

118.    Since at least May 18, 2021, Hershey failed, in violation of Section 709(c) of Title VII, 42 U.S.C. §2000e-8(c) and 29 C.F.R. §1602.12, to create, maintain, and file EEO-1 reports.

119.    The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of genetic information.

120.    The effect of the practices complained above has been to deprive the Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disabilities.

121.    The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee participating in invitro-fertilization with his spouse.

122.    The effect of the practices complained of above has been to inflict emotional pain, suffering, and inconvenience upon the Plaintiff who provided genetic information to Hershey.

123.    The unlawful employment practices complained of above were intentional.

124.    The unlawful employment practices complained of above were done with malice and reckless disregard for the federally protected rights.

**COUNT 10**
**INVASION OF PRIVACY- INTRUSION UPON SECLUSION**

125.    Plaintiff incorporates herein the previous averments as if fully set forth.

126.    The Defendants intentionally entered upon the solitude and seclusion of the Plaintiff by asking him questions about he and his wife's invitro-fertilization procedures and specifics regarding the medical and genetic mixing of medications.

127.    Additionally, the Defendants intruded upon the Plaintiff's private affairs and concerns which are not of public concern.

128.    The intrusion was highly offensive to a reasonable person because it involved the intrusion into private medical information regarding the Plaintiff and his participation in his wife's invitro-fertilization and the mixing of medications to inject her with.

129.    The Defendants' access of the medical and invitro-fertilization information and/or records was not of a legitimate nature as Defendants, without authorization or justification intruded to acquire the information in a malicious fashion for the purpose of harming the Plaintiff.

130.    The Defendants' actions and statements were sufficiently outrageous as to entitle the Plaintiff to an award of compensatory and punitive damages.

## COUNT 11
## NEGLIGENT SUPERVISION

131.   Plaintiff incorporates herein the previous averments as if fully set forth.

132.   Defendants had a duty to prevent the intrusion of Plaintiff's private medical
information while he worked at Hershey.

133.   Defendants intruded upon Plaintiff's private medical information including
invitro-fertilization participation and mental health conditions and
dissemination/communication of the same to human resources, corporate
relations, and other supervisors as well as other third parties from May 18, 2021,
through May 25, 2021, and beyond.

134.   The Defendant and its agents breached its duties by permitting the Plaintiff's
medical information and records to be intruded upon and
disseminated/communicated to parties who had no right to know, as well as to
third parties outside of Hershey without justification and without his consent.

135.   The Defendant caused the Plaintiff to be harmed, and to become mentally and
emotionally ill, exacerbating his existing health and mental health conditions by
its negligent act of permitting the intrusion of and dissemination of his private
medical information including but not limited to his invitro-fertilization
participation, anxiety, and depression.

136.   But for the Defendants' reckless and grossly negligent actions, Plaintiff would not have experienced the serious physical, mental and emotional harm, or exacerbation of pre-existing conditions.

137.   Plaintiff's harm was foreseeable in that a reasonable person would anticipate that Defendants' actions would result in the physical, mental, and emotional harm.

138.   Plaintiff has incurred damages for lost wages, damaged reputation, as well as but not limited to sleeplessness, anxiety, depression, suicidal ideation, and other stress disorders as well as suffering indignities and embarrassment.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court grant relief on his Causes of Action as specified below.

139.   The Plaintiff prays that the Court award monetary relief as follows:

140.    On his Causes of Action, order Defendants to pay equitable monetary relief and compensatory damages to the Plaintiff as are asserted under the ADA, FMLA, PHRA, and under GINA, where and as applicable, and in an amount to be proven at trial.

141.    The Plaintiff prays that the Court award him costs, expenses, and attorneys' fees, payable by Defendants where and as applicable, by determining that the Plaintiff is a prevailing party on his Causes of Action and thereupon

awarding the Plaintiff his reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

142.     Further, the Plaintiff prays that the Court award monetary relief as follows:

143.      The Plaintiff prays that the Court order to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

144.     The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period to assure that the Defendants have fully complied with the remedies to the greatest extent practicable.

145.     The Plaintiff prays that the Court award all appropriate pain, suffering, humiliation, and punitive damages as applicable under his respective causes of action where and as applicable to the named Defendants.

146.     The Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

Dated: November 16, 2021               Respectfully submitted,

                                       DONHAM LAW

                                       *By: /s/ Jeremy A. Donham, Esquire*
                                       Jeremy Donham, Esquire
                                       Attorney I.D. No. 206980
                                       PO Box 487, Dellslow, WV 26531
                                       717.881.7855 (ph) 888.370.5177 (fax)