# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VELIBOR DIVKOVIC,

Plaintiff,

vs.

THE HERSHEY COMPANY, KRISTI UMBERGER, INDIVIDUAL JOHN DOE 1, INDIVIDUAL JOHN DOE 2, INDIVIDUAL,

Defendants.

Case No. 1:21-cv-01947-JPW

Hon. Jennifer P. Wilson

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Dated: March 31, 2023

Michael J. Puma (PA 94463)
Eric C. Kim (PA 316245)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: 215.963.5000
Fax: 215.963.5001
*Counsel for Defendants*

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ....................................................................................1

II.  PROCEDURAL HISTORY AND STATEMENT OF FACTS....................4

III.  STATEMENT OF QUESTIONS INVOLVED ............................................4

IV.  SUMMARY JUDGMENT STANDARD ......................................................4

V.  ARGUMENT..............................................................................................5

A.  Defendants Are Entitled to Summary Judgment on Mr.
Divkovic's FMLA Interference Claim (Count 7). .............................5

B.  Defendants Are Entitled to Summary Judgment on Mr.
Divkovic's FMLA Retaliation Claim (Count 8). ................................8

    1.  Mr. Divkovic fails to make a prima facie case of FMLA
retaliation because he cannot establish causation between
his leave requests and his termination. ....................................10

    2.  Mr. Divkovic cannot establish that Hershey's decision to
terminate his employment for misuse of FMLA leave
was pretext for retaliation. ........................................................11

C.  Defendants Are Entitled to Summary Judgment on Divkovic's
ADA and PHRA Claims (Counts 1-6). ..............................................19

    1.  Mr. Divkovic's failure-to-accommodate claim fails as a
matter of law because he admittedly received the only
accommodation he requested...................................................20

    2.  Mr. Divkovic's disability discrimination and retaliation
claims fail for the same reasons as his FMLA retaliation
claim – he cannot prove causation or pretext. .........................21

    3.  Mr. Divkovic's hostile work environment claim fails as a
matter of law because he was not subjected to severe and
pervasive treatment on the basis of his disability or any
other reason. .............................................................................23

# TABLE OF CONTENTS
(continued)

**Page**

D.    Defendants Are Entitled to Summary Judgment on Mr. Divkovic's GINA Disability Claim (Count 9). ...................................27

E.    Defendants Are Entitled to Summary Judgment on Mr. Divkovic's Common Law Claim of Intrusion Upon Seclusion (Count 10)...........................................................................30

F.    Defendants are Entitled to Summary Judgment on Mr. Divkovic's Common Law Claim of Negligent Supervision (Count 11)...........................................................................32

G.    Even if Mr. Divkovic's Claims Are Not Dismissed, the Court Should Find that Mr. Divkovic's Damages Are Limited Pursuant to The After-Acquired-Evidence Doctrine. ........................33

VI.    CONCLUSION.............................................................................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andreoli v. Gates*,
    482 F.3d 641 (3d Cir. 2007)..................................................................21

*Atchison v. Sears*,
    666 F. Supp. 2d 477 (E.D. Pa. 2009) ......................................................7

*Beishl v. Cnty. of Bucks*,
    No. 18-2835, 2019 WL 4464402 (E.D. Pa. Sept. 18, 2019) ...................12

*Belmont v. MB Inv. Partners, Inc.*,
    708 F.3d 470 (3d Cir. 2013)..................................................................33

*Bevan v. Cnty. of Lackawanna*,
    No. 3:17-CV-0919, 2017 WL 6336595 (M.D. Pa. Dec. 12, 2017)..........6

*Bialko v. Quaker Oats Co.*,
    434 F. App'x 139 (3d Cir. 2011) ...........................................................19

*Boykins v. Lucent Techs., Inc.*,
    78 F. Supp. 2d 402 (E.D. Pa. 2000) ........................................................9

*Calero v. Cardone Indus., Inc.*,
    No. 11-3192, 2012 WL 2547356 (E.D. Pa. June 29, 2012)...................10

*Callison v. City of Philadelphia*,
    430 F.3d 117 (3d Cir. 2005)..................................................................14

*Canada v. Samuel Grossi & Sons, Inc.*,
    476 F. Supp. 3d 42 (E.D. Pa. 2020) ......................................................31

*Capps v. Mondelez Glob., LLC*,
    847 F.3d 144 (3d Cir. 2017)..............................................................8, 20

*Carvalho-Grevious v. Del. State Univ.*,
    851 F.3d 249 (3d Cir. 2017)..................................................................16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................4, 5

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)...............................................................................24

*Conoshenti v. Pub. Serv. Elec. & Gas Co.*,
  364 F.3d 135 (3d Cir. 2004)..................................................................9

*Cooper–Nicholas v. City of Chester*,
  No. 95-6493, 1997 WL 799443 (E.D. Pa. Dec. 30, 1997).......................26

*Crouch v. Whirlpool Corp.*,
  447 F.3d 984 (7th Cir. 2006) ...............................................................12

*Cunningham v. Nordisk*,
  615 F. App'x 97 (3d Cir. 2015) .............................................................5

*Cunningham v. Novo Nordisk*,
  No. 12–6654, 2014 WL 1318390 (E.D. Pa. Apr. 1, 2014) .....................21

*Deane v. Pocono Med. Ctr.*,
  142 F.3d 138 (3d Cir. 1998)..................................................................22

*E.E.O.C. v. Rose Casual Dining, L.P.*,
  No. 02-7485, 2004 WL 614806 (E.D. Pa. Mar. 5, 2004) .......................34

*Fuentes v. Perskie*,
  32 F.3d 759 (3d Cir. 1994)................................................................9, 16

*Grassmyer v. Shred–It USA, Inc.*,
  392 F. App'x. 18 (3d Cir. 2010) ...........................................................26

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) ...............................................................................24

*Horgan v. Simmons*,
  704 F. Supp. 2d 814 (N.D. Ill. 2010) ...................................................32

*Isley v. Aker Phila. Shipyard, Inc.*,
  275 F. Supp. 3d 620 (E.D. Pa. 2017) ...................................................23

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*,
  691 F.3d 294 (3d Cir. 2012)...............................................................6, 7

*Lombard v. Lassip, Inc.*,
  No. 17-964, 2017 WL 6367956 (E.D. Pa. Dec. 13, 2017).......................27

*Lovland v. Emps. Mut. Cas. Co.*,
  674 F.3d 806 (8th Cir. 2012) .................................................................6

*Malloy v. U.S. Postal Serv.*,
  756 F.3d 1088 (8th Cir. 2014) .............................................................10

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ........................................................................................ 7, 9, 21, 27

*McIntosh v. White Horse Vill., Inc.*,
249 F. Supp. 3d 796 (E.D. Pa. 2017) ................................................................................ 6

*McKennon v. Nashville Banner Publ'g Co.*,
513 U.S. 352 (1995) .................................................................................................... 33, 35

*Moore v. CVS Rx Servs., Inc.*,
142 F. Supp. 3d 321 (M.D. Pa. 2015) ........................................................................... 21

*Moughari v. Publix Super Mkts.*,
1998 WL 307454 (N.D. Fla. Apr. 27, 1998),
*aff'd sub nom. Moughari v. Publix Supermarket*,
170 F.3d 188 (11th Cir. 1999) .......................................................................................... 8

*Myers v. City of Wilkes-Barre*,
448 F. Supp. 3d 400 (M.D. Pa. 2020) .............................................................................. 5

*Naber v. Dover Healthcare Assocs., Inc.*,
765 F. Supp. 2d 622 (D. Del. 2011),
*aff'd*, 473 F. App'x 157 (3d Cir. 2012) ......................................................................... 17

*Nicholson v. City of Clarksville*,
530 F. App'x 434 (6th Cir. 2013) .................................................................................... 24

*O'Donnell v. United States*,
891 F.2d 1079 (3d Cir. 1989) .................................................................................... 30, 31

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........................................................................ 32

*Ortiz v. City of San Antonio Fire Dep't*,
806 F.3d 822 (5th Cir. 2015) .......................................................................................... 27

*Pamintuan v. Nanticoke Mem'l Hosp.*,
192 F.3d 378 (3d Cir. 1999) ............................................................................................ 18

*Paneto v. CWork Sols., LP*,
No. 18-CV-1794, 2020 WL 7027588 (M.D. Pa. Nov. 30, 2020) ................................ 33

*Pierce-Schmader v. Mount Airy Casino & Resort*,
No. 3:13-cv-1141, 2014 WL 8106125 (M.D. Pa. Nov. 20, 2014) ............................... 20

*Proudfoot v. Arnold Logistics, LLC*,
59 F. Supp. 3d 697 (M.D. Pa. 2014),
*aff'd*, No. 14-4703, 2015 WL 5881530 (3d Cir. Oct. 8, 2015) .................................... 18

*Punt v. Kelly Servs.*,
    862 F.3d 1040 (10th Cir. 2017) ..........................................................................27

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ...........................................................................................9

*Ross v. Gilhuly*,
    755 F.3d 185 (3d Cir. 2014) ................................................................................6

*Ryder v. Westinghouse Elec. Corp.*,
    128 F.3d 128 (3d Cir. 1997) ................................................................................9

*Sommer v. The Vanguard Grp.*,
    461 F.3d 397 (3d Cir. 2006) ................................................................................5

*Stephenson v. JLG Indus., Inc.*,
    No. 09-CV-1643, 2011 WL 1304625 (M.D. Pa. Mar. 31, 2011) ............................7

*Stonum v. U.S. Airways, Inc.*,
    83 F. Supp. 2d 894 (S.D. Ohio 1999) ..................................................................8

*Straining v. AT&T Wireless Servs., Inc.*,
    144 F. App'x 229 (3d Cir. 2005) ........................................................................22

*Taggart v. Verizon Del. LLC*,
    No. 10-669, 2013 WL 456406 (D. Del. Feb. 1, 2013) ..........................................24

*Tillman v. Ohio Bell Tel. Co.*,
    545 F. App'x 340 (6th Cir. 2013) ......................................................................12

*Trauthwein v. CSX Transp., Inc.*,
    No. 3:18-CV-840-J-39JBT, 2020 WL 3266214 (M.D. Fla. Mar. 6, 2020) ............13

*Truong v. Dart Container Corp.*,
    No. 09-3348, 2010 WL 4611980 (E.D. Pa. Nov. 12, 2010) ..................................32

*Vail v. Raybestos Prods. Co.*,
    533 F.3d 904 (7th Cir. 2008) ..............................................................................7

*Vogel v. W. T. Grant Co.*,
    327 A.2d 133 (Pa. 1974) ...................................................................................30

*Walton v. Mental Health Ass'n of Se. Pa.*,
    168 F.3d 661 (3d Cir. 1999) ..............................................................................24

*Warwas v. City of Plainfield*,
    489 F. App'x 585 (3d Cir. 2012) ........................................................................12

*Watson v. Pa., Dep't of Revenue,*
    854 F. App'x 440 (3d Cir. 2021) ..................................................16

*White v. Stroh Brewery Co.,*
    15 F. Supp. 2d 734 (E.D. Pa. 1998) .........................................23

*Woldeselassie v. Am. Eagle Airlines, Inc.,*
    647 F. App'x 21 (2d Cir. 2016) ................................................10

*Yandrisevitz v. H.T. Lyons, Inc.,*
    No. 08-1444, 2009 WL 2195139 (E.D. Pa. July 22, 2009) ...................17

**Statutes**

29 U.S.C. § 2614 ...............................................................................13

42 U.S.C. § 2000ff-1(a)(1) ..................................................................27

**Rules**

Fed. R. Civ. P. 56 ..............................................................................4

**Regulations**

29 C.F.R. § 1633(c) ...........................................................................28

29 C.F.R. § 1633(f) ...........................................................................28

29 C.F.R. § 1635.12 ...........................................................................28

**Other Authorities**

*Background Information for EEOC Final Rule on Title II of the Genetic
    Information Nondiscrimination Act of 2008*, U.S. EEOC,
    http://www.eeoc.gov/laws/regulations/gina-background.cfm ................29

Restatement (Second) of Torts § 652B .....................................................30

## I.  <u>INTRODUCTION</u>

On numerous occasions throughout the course of Plaintiff Velibor Divkovic's employment with The Hershey Company (Hershey), Mr. Divkovic requested—and was granted—continuous and intermittent leaves under the Family and Medical Leave Act (FMLA).  This case concerns Mr. Divkovic's last FMLA leave, which he sought in February 2021, based on a certification from his wife's doctor stating that he needed to be available to transport his wife to appointments for in vitro fertilization (IVF) treatments.  Consistent with that doctor's certification, Hershey granted this FMLA leave and issued Mr. Divkovic a designation notice stating clearly that the Company is approving this leave *solely* for the purpose of allowing him to transport his wife to her IVF appointments.

Mr. Divkovic then took nearly 30 full days off between February and May 2021 with this FMLA leave.  However, on over 20 of those days, when Mr. Divkovic was purportedly taking his wife, Barbara Divkovic, to her IVF appointments, she was actually working a full shift at another Hershey plant.  Given that Mr. and Mrs. Divkovic both worked the same shift for Hershey just in different locations, there was physically no way Mr. Divkovic could have used his FMLA leave for its approved purpose on those days. *Mrs. Divkovic couldn't be present for a full day of work while simultaneously attending a doctor's appointment with Mr. Divkovic.*

When confronted with these facts during Hershey's investigation into this discrepancy, Mr. Divkovic was combative and defensive, and he made veiled threats against the person interviewing him.  Nevertheless, he admitted that on the majority of days he took FMLA leave, he did not take Mrs. Divkovic to her IVF appointments. Mr. Divkovic further admitted that he took full days off just to spend approximately 30 minutes preparing IVF medications, even though Hershey did not approve his FMLA leave for that purpose.

Notwithstanding that Mr. Divkovic's own egregious misconduct caused his termination, he unabashedly alleges that Hershey interfered with and retaliated against him for taking FMLA leave.  He also asserts claims under the Americans with Disabilities Act (ADA), and the Genetic Information Nondiscrimination Act (GINA), as well as related state law tort claims.  All of those claims are baseless, and Hershey is entitled to summary judgment for the following reasons:

- **FMLA Interference Claim (Count 7)**: Mr. Divkovic's FMLA interference claim fails for the simple reason that he admits *every single one of his FMLA requests with Hershey have been granted*. His claim also fails because it is impermissibly duplicative of his retaliation claim.

- **FMLA Retaliation Claim (Count 8)**: Mr. Divkovic's FMLA retaliation claim fails because courts in the Third Circuit and other jurisdictions have made clear that when an employee is terminated for misusing FMLA leave, summary judgment is warranted if—as here—the evidence shows that the employer had an "honest belief" that the employee used his leave for reasons other than its intended purpose.

- **ADA, GINA, and Related State Law Claims (Counts 1, 2, 3, 4, 5, 6, and 9)**: Mr. Divkovic's ADA, GINA, and related state law claims fail

because he cannot proffer any evidence of discrimination, and it is beyond genuine dispute that Hershey terminated his employment due to his own misconduct, which precludes Mr. Divkovic from meeting his burden to prove pretext.

- **Intrusion Upon Seclusion and Negligent Supervision Claims (Counts 10 and 11):** Mr. Divkovic's intrusion upon seclusion and negligent supervision claims fail because those claims require proof that the alleged bad actor acted outside the scope of his employment. Here, it is undisputed that the Hershey employee who conducted the investigation into Mr. Divkovic's FMLA misuse was acting at the direction of his manager and simply doing his job.

Moreover, during discovery Hershey subpoenaed medical records from Mrs. Divkovic's fertility doctor that it could not have obtained absent this litigation. Those medical records *unquestionably confirm* that Mr. Divkovic abused his FMLA leave, further supporting Hershey's grounds for termination. Specifically, the records show that there was *only one instance* when Mr. Divkovic took FMLA leave on a date that required him to drive Mrs. Divkovic to an IVF appointment. The records also show that Mr. Divkovic continued to take several days of FMLA leave for his wife's IVF appointments, *even after being informed that she was pregnant* and after she had no more IVF appointments left.[1]

For these reasons, which are explained further below, Defendants respectfully request that the Court grant their motion for summary judgment.

---

[1] Thus, if any of Mr. Divkovic's claims are permitted to proceed, Hershey respectfully requests that the Court find that the after-acquired-evidence doctrine limits any damages that Mr. Divkovic could receive. *See infra* Section V.G.

## II.    PROCEDURAL HISTORY AND STATEMENT OF FACTS

Plaintiff filed his Complaint on November 26, 2021 alleging statutory claims for FMLA interference and retaliation and disability discrimination and retaliation, as well as common law claims of intrusion upon seclusion and negligent supervision under Pennsylvania law.  *See* ECF 1.  Since then, the parties have completed discovery and this matter is now ripe for summary judgment.  Defendants incorporate herein by reference their separate Statement of Material Facts ("SOF"), filed contemporaneously with this motion.

## III.    STATEMENT OF QUESTIONS INVOLVED

(1)  Should Mr. Divkovic's claims be dismissed pursuant to Federal Rule of Civil Procedure 56 because there is no genuine dispute of material fact that Hershey approved Mr. Divkovic's FMLA leave and accommodations requests, and subsequently terminated his employment after conducting an investigation that determined he misused his FMLA leave?

(2)  Alternatively, should Mr. Divkovic's purported damages be limited by the after-acquired-evidence doctrine because the medical records obtained by Hershey during the course of this litigation provide affirmative confirmation of Mr. Divkovic's misconduct?

## IV.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support his claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323. A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *See, e.g.*, *Myers v. City of Wilkes-Barre*, 448 F. Supp. 3d 400, 409 (M.D. Pa. 2020) (Wilson, J.). To be "material," a disputed issue must be able to "affect the outcome of the suit under the governing law." *Id.* (citation omitted).

Here, there is no genuine dispute as to any material fact, and thus, the Court should grant summary judgment on all claims.

## V. <u>ARGUMENT</u>

### A. Defendants Are Entitled to Summary Judgment on Mr. Divkovic's FMLA Interference Claim (Count 7).

To prevail on an FMLA interference claim, Mr. Divkovic "needs to show that he was entitled to benefits under the FMLA and that he was denied them." *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 398-99 (3d Cir. 2006) (affirming summary judgment dismissal of FMLA interference claims). Because Mr. Divkovic admits that Hershey did not deny any of his requests for FMLA leave (*see* SOF ¶¶ 14-23), Hershey is entitled to summary judgment. *See, e.g.*, *Cunningham v. Nordisk*, 615 F. App'x 97, 101 (3d Cir. 2015) (affirming summary judgment for employer where employee was granted all of the leave she requested and there was no evidence that

additional FMLA leave was needed); *Ross v. Gilhuly*, 755 F.3d 185, 192 (3d Cir.
2014) ("Ross's argument that Gilhuly interfered with his entitlement to take FMLA
leave free from later discrimination confuses interference with retaliation and is thus
misdirected.  At bottom, '[a]n interference action is not about discrimination [;] it is
only about whether the employer provided the employee with the entitlements
guaranteed by the FMLA.'" (citations omitted)); *McIntosh v. White Horse Vill., Inc.*,
249 F. Supp. 3d 796, 801 (E.D. Pa. 2017) (granting summary judgment to employer
where the parties agreed that plaintiff requested and was granted FMLA leave);
*Bevan v. Cnty. of Lackawanna*, No. 3:17-CV-0919, 2017 WL 6336595, at *7 (M.D.
Pa. Dec. 12, 2017) (granting motion to dismiss where plaintiff alleged that defendant
granted his request for FMLA leave and he was able to use that leave).

Moreover, the Third Circuit has recognized that the FMLA does not guarantee
"an automatic right to claim interference where . . . the claim is so clearly redundant
to the retaliation claim."  *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d
294, 312 n. 25 (3d Cir. 2012) (observing that "[i]n recent years, several federal courts
of appeals have affirmed dismissal of interference claims that . . . were duplicative
of the plaintiffs' retaliation claims").  The *Lichtenstein* court cited numerous cases
holding that when a plaintiff's factual premise for FMLA retaliation and interference
claims is redundant, the court should construe the claims as a retaliation claim.  *See,
e.g.*, *Lovland v. Emps. Mut. Cas. Co.*, 674 F.3d 806, 811–12 (8th Cir. 2012)

(affirming district court's conclusion that plaintiff "asserted only . . . retaliation claims because she alleged discrimination that occurred after she took FMLA leave, not denial of, or interference with, her leave"); *Atchison v. Sears*, 666 F. Supp. 2d 477, 489 (E.D. Pa. 2009) ("[Plaintiff's] interference claim is identical to his retaliation claim, and premised on the same allegation[s] . . . . He cannot escape the *McDonnell Douglas* analysis to prove his case merely by affixing an 'interference' label to one of his duplicative claims. Thus, [plaintiff's] FMLA violation allegations should be analyzed as a retaliation claim.").

As with the above-cited cases, here, Mr. Divkovic's interference claim is duplicative of his retaliation claim. He does not claim that Hershey denied his FMLA leave request or discouraged him from taking FMLA leave, but rather that Hershey wrongfully terminated him after he took leave. That is a quintessential retaliation claim (an unsupported and meritless one, but a retaliation claim nonetheless). *See, e.g.*, *Lichtenstein*, 691 F.3d at 312 n.25.

To the extent Mr. Divkovic claims that the investigation into his FMLA use constituted FMLA interference, courts repeatedly have confirmed that such investigations do not constitute FMLA interference. *See, e.g.*, *Stephenson v. JLG Indus., Inc.*, No. 09-CV-1643, 2011 WL 1304625, at *4 (M.D. Pa. Mar. 31, 2011); *Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909-10 (7th Cir. 2008) (upholding termination of employee where employer received tips that employee was abusing

intermittent FMLA leave that were confirmed by an off-duty police investigation); *Stonum v. U.S. Airways, Inc.*, 83 F. Supp. 2d 894, 899-904 (S.D. Ohio 1999) (finding no FMLA violations for employee's termination following a private investigation confirming FMLA leave used for purposes other than its intended purpose); *Moughari v. Publix Super Mkts.*, 1998 WL 307454, *1–2 (N.D. Fla. Apr. 27, 1998) (finding no FMLA interference where employee's supervisor called employee several times to determine his status while on intermittent FMLA leave and ultimately terminated employee after determining that employee was working at a second job), *aff'd sub nom. Moughari v. Publix Supermarket*, 170 F.3d 188 (11th Cir. 1999).

Defendants are entitled to summary judgment on Mr. Divkovic's FMLA interference claim because he was never denied leave and his claim is duplicative of his retaliation claim.

### B. Defendants Are Entitled to Summary Judgment on Mr. Divkovic's FMLA Retaliation Claim (Count 8).

Mr. Divkovic has presented no evidence to support his theory that Defendants retaliated against him for taking FMLA leave by terminating his employment. An FMLA retaliation claim is reviewed under the same burden-shifting scheme used to review retaliation claims brought under Title VII of the Civil Rights Act of 1964. *See Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151-52 (3d Cir. 2017). Under this analysis, the plaintiff first bears the burden of establishing a prima facie case of

unlawful retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to his FMLA leave. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004).

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate non-retaliatory reason for the actions taken. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The employer's burden at this stage is relatively light in that it is satisfied if the employer articulates some legitimate reason for the actions taken. *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000). Once an employer has articulated a legitimate reason, the burden returns to the plaintiff, who must ultimately persuade the factfinder by a preponderance of the evidence that the employer's proffered reason is not the true reason, but rather is merely a pretext for retaliation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 136 (3d Cir. 1997).

Here, Mr. Divkovic cannot establish a prima facie case for FMLA retaliation because he cannot show causation. But even assuming he could establish a prima

facie case, Defendants have proffered a legitimate, nonretaliatory reason for his termination, and Mr. Divkovic cannot prove that such reason is pretext.

**1. Mr. Divkovic fails to make a prima facie case of FMLA retaliation because he cannot establish causation between his leave requests and his termination.**

Mr. Divkovic cannot carry his burden to establish causation necessary for a prima facie case of FMLA retaliation. Courts consistently have found that any causation is undermined when evidence demonstrates that a plaintiff took FMLA leave in the past with no repercussions. *See, e.g.*, *Woldeselassie v. Am. Eagle Airlines, Inc.*, 647 F. App'x 21, 23 (2d Cir. 2016) (affirming summary judgment against FMLA retaliation claim, finding that there is no inference of retaliation because "[t]he record reflects that [plaintiff] had exercised her right to FMLA leave in the past without any negative consequences"); *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088, 1091 (8th Cir. 2014) ("[Plaintiff] also used FMLA leave on several other occasions between April and November without repercussions, suggesting that the employer was not hostile to the protected activity."); *Calero v. Cardone Indus., Inc.*, No. 11-3192, 2012 WL 2547356, at *8 (E.D. Pa. June 29, 2012) (granting summary judgment, holding that based on defendant's history of granting FMLA leave to plaintiff in the past, "a reasonable factfinder could determine that it bolsters [defendant's] assertion that [plaintiff's] termination had nothing to do with his FMLA leave").

In the present case, the undisputed evidence shows that Hershey approved all of Mr. Divkovic's numerous FMLA leave requests over several years, all without any repercussions to his employment. Specifically, between 2018 and 2021, Mr. Divkovic sought and received intermittent FMLA leave approval six times (SOF ¶¶ 15, 16, 17, 19, 21) and continuous FMLA approval three times (SOF ¶¶ 18, 20, 22). In 2020, for example, Mr. Divkovic took intermittent FMLA leave on approximately 34 days. SOF ¶ 23.

During this entire period, the *only* adverse employment action that Mr. Divkovic alleged in the Complaint is his termination in May 2021, shortly after Hershey concluded its investigation into his misuse of FMLA leave. Thus, Mr. Divkovic's FMLA retaliation claim requires a factfinder to believe that Hershey granted all of his FMLA leave requests for numerous years, and then finally decided to retaliate in 2021 for some unknown reason. There is no evidence to support such a far-fetched theory. Simply put, Hershey's history of providing Mr. Divkovic with an extensive amount of FMLA leave for several years, without any repercussions to his employment, negates any inference of retaliation.

> **2.    Mr. Divkovic cannot establish that Hershey's decision to terminate his employment for misuse of FMLA leave was pretext for retaliation.**

Even if Mr. Divkovic could establish a prima facie case of FMLA retaliation (which he cannot), his claim nonetheless fails because the evidence establishes that

Hershey ended his employment for legitimate, non-retaliatory reasons, and he cannot proffer any evidence to prove pretext.

To that end, courts consistently have held that FMLA claims should be dismissed if the evidence shows that the employer had an "honest belief" that the employee used his leave for reasons other than its intended purpose. *See, e.g.*, *Warwas v. City of Plainfield*, 489 F. App'x 585, 588 (3d Cir. 2012) (affirming summary judgment dismissal of FMLA interference claim where evidence showed that the employer had an "honest belief" that the employee failed to use approved FMLA leave for the intended purpose); *Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 349 (6th Cir. 2013) (affirming summary judgment dismissal of FMLA retaliation claim because the employer had "reasonable reliance" on the facts reflecting plaintiff's misuse of FMLA leave, such as plaintiff the taking leave to extend holiday breaks or other days off, and noting that an employer's honest belief, even if mistaken, is sufficient to defeat this type of claim); *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006) (affirming summary judgment dismissal of FMLA claims, holding that "an employer's honest suspicion that the employee was not using his medical leave for its intended purpose is enough to defeat the employee's . . . FMLA claim"); *Beishl v. Cnty. of Bucks*, No. 18-2835, 2019 WL 4464402, at *11-13 (E.D. Pa. Sept. 18, 2019) (granting summary judgment dismissal of FMLA interference and retaliation claims where evidence showed plaintiff

posting on social media about performing in a rock band on days he took FMLA leave, and holding that employer had an "honest belief" that he misused his FMLA leave); *Trauthwein v. CSX Transp., Inc.*, No. 3:18-CV-840-J-39JBT, 2020 WL 3266214, at *3 (M.D. Fla. Mar. 6, 2020) (granting summary judgment dismissal of FMLA retaliation and interference claims where the employer identified FMLA misuse by comparing employee-spouse schedules).

The holding in *Trauthwein* is particularly informative because the facts are nearly identical to the present case. 2020 WL 3266214 at *6. There, a husband and wife both worked for the same employer, like Mr. and Mrs. Divkovic. The employer was alerted to possible FMLA misuse when a supervisor noticed that the wife consistently took FMLA leave on the days when her husband was not working. *Id*. at *3. After conducting an investigation and a hearing to weigh the evidence, including a review of the wife's and her husband's attendance records, the employer then determined that the employee misused FMLA leave and terminated her employment. *Id*. Upon review, the court held that there was "no evidence on this record that would allow the jury to find that this sequence of events resulting in Plaintiff's termination was pretextual." *Id*. at *6.

These opinions are not just based on common sense. The statutory provisions of the FMLA only protect the employment of those "who take[] leave . . . *for the intended purpose of the leave*." 29 U.S.C.. § 2614 (emphasis added). Consistent

with such language, the Third Circuit has recognized that "nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave." *Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005).

Here, Hershey has demonstrated a legitimate, non-retaliatory reason for Mr. Divkovic's termination: the Company had an honest belief that Mr. Divkovic did not use his FMLA leave for its intended purpose. Hershey granted the FMLA leave at issue in February 2021, after Mr. Divkovic submitted a healthcare certification from Mrs. Divkovic's fertility doctor, which stated that Mr. Divkovic may need to transport his wife to some of her IVF appointments. SOF ¶¶ 32, 35. That was the *only* reason Mrs. Divkovic's doctor provided for the FMLA request. Consequently, Hershey granted Mr. Divkovic's FMLA request (hereafter referred to as "FMLA family leave") and gave him a designation notice clearly stating that he was permitted to take intermittent leave "to transport [his] spouse to appointments." SOF ¶ 35.

In April 2021, Hershey's Absence Management team began to suspect that Mr. Divkovic was misusing his FMLA leave, when he claimed that certain days off were for his personal FMLA leave. When he was informed that his personal FMLA leave expired, Mr. Divkovic sought to switch the designation for those days to his FMLA family leave. SOF ¶ 39. Given that Mrs. Divkovic worked for Hershey on

the same second shift as Mr. Divkovic in a nearby Hershey plant, a member of the Absence Management team, Morgan Hoak, compared Mr. Divkovic's family leave days with Mrs. Divkovic's attendance record. Ms. Hoak's analysis found that Mr. Divkovic took six days of FMLA family leave in April, during which Mrs. Divkovic reported to full days of work. SOF ¶ 43. Because it would have been physically impossible for Mr. Divkovic to be using his FMLA family leave for its intended purpose while his wife reported to full days of work, Ms. Hoak flagged this discrepancy for Hershey's Human Resources team, and an investigator from Employee Relations, Tory Niceswander, took on the case. SOF ¶¶ 45-47.

Mr. Niceswander's investigation included interviews with Ms. Hoak and Mr. Divkovic, as well as review of the relevant FMLA and attendance records for Mr. Divkovic and Mrs. Divkovic, respectively. SOF ¶ 48. Prior to interviewing Mr. Divkovic, Mr. Niceswander determined that Mr. Divkovic took FMLA family leave on over 20 days when his wife reported to full days of work at Hershey. SOF ¶ 52.

When Mr. Niceswander confronted Mr. Divkovic with these facts during their interview, Mr. Divkovic admitted that not all of the approximately 30 FMLA family leave days he had taken were used to transport his wife to her IVF appointments. *Id.* Mr. Divkovic instead claimed that he used his FMLA family leave to prepare IVF medications for his spouse, even though that was *not* the intended or approved purpose of his leave. SOF ¶ 53. But when asked why he would take a full day off

to help administer medications that only took – by his own admission – no more than 30 minutes to prepare, Mr. Divkovic could not provide a legitimate response.  SOF ¶ 54.  Moreover, during the interview, Mr. Divkovic was defensive and argumentative, and he made veiled threats to Mr. Niceswander about how he was from a "warzone country."  SOF ¶ 55.  Ultimately, Mr. Niceswander concluded that Mr. Divkovic did not use his FMLA leave for its intended purpose and recommended that the Hershey HR team terminate his employment.  SOF ¶ 57.  Hershey's HR team accepted that recommendation and terminated Mr. Divkovic on May 25, 2021.  SOF ¶¶ 71-73.

Based on these facts, which are beyond genuine dispute, it is clear that Hershey had an honest belief that Mr. Divkovic did not use his FMLA family leave for its intended purpose.  Hershey, therefore, can establish that it had a legitimate, non-retaliatory reason for terminating Mr. Divkovic's employment.

The final burden then shifts to Mr. Divkovic to prove that Hershey's legitimate reason is pretext for retaliation.  To do so, Mr. Divkovic must "either (i) discredit[] the proffered reasons, either circumstantially or directly, or (ii) adduc[e] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  *Fuentes*, 32 F.3d at 764.  This step requires a plaintiff to "make a second showing of causation 'to satisfy her ultimate burden of persuasion by proving pretext.'"  *Watson v. Pa., Dep't of Revenue*, 854 F. App'x 440, 442 (3d Cir. 2021) (quoting *Carvalho-*

*Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017)).  In other words, Mr. Divkovic "must show 'not merely that [Hershey's] proffered reason was wrong, but that it was so plainly wrong that it cannot have been the real reason [for the termination].'"  *Naber v. Dover Healthcare Assocs., Inc.*, 765 F. Supp. 2d 622, 639 (D. Del. 2011) (granting summary judgment on FMLA retaliation claim, holding that plaintiff's misconduct "broke the causal chain"), *aff'd*, 473 F. App'x 157 (3d Cir. 2012).

Mr. Divkovic cannot meet his burden to establish pretext.  Indeed, there is no evidence reflecting that Mr. Niceswander or any of the individuals involved in the decision to terminate Mr. Divkovic had any retaliatory animus.   Mr. Divkovic admitted this in his deposition:

> Q.    What evidence do you have to support this idea that Hershey retaliated against you because they granted your accommodation request or because of your FMLA leave?
>
> A.    ***I don't have evidence***. I feel that is how it comes off as.  ***I guess*** you probably state [I was] being a burden on them, ***I guess***.  Not of your own fault.  It is not my own fault; but thinking in my head[,] I am probably a burden and problems [sic].[2]

---

[2] Mr. Divkovic goes on to speculate about how certain emails from members of Hershey's Absence Management team suggest to him that they did not like him. SOF Ex.1 D43-44, V. Divkovic Dep. 83:7-84:14.  However, it is beyond genuine dispute that those Absence Management team members had no involvement whatsoever in the decision to terminate Mr. Divkovic's employment.  SOF ¶¶ 48, 70.  And mere speculation is not enough to defeat summary judgment. *Yandrisevitz v. H.T. Lyons, Inc.*, No. 08-1444, 2009 WL 2195139, at *5 (E.D. Pa. July 22, 2009) (granting summary judgment to dismiss FMLA claims in part because plaintiff

SOF Ex. 1, D42-43, 82:22-83:6 (emphasis added).

Furthermore, the evidence is undisputed that Hershey had an honest belief that Mr. Divkovic misused his FMLA leave. Mr. Divkovic's entire basis for alleging retaliation is his belief that Hershey should have given him a chance to either recertify his FMLA family leave or give him a warning about the intended purpose of that leave. Specifically, he claims that once he told Hershey that he believed he could use his FMLA family leave for reasons besides just transporting his wife to her IVF appointments, Hershey should not have terminated him. Simply put, he disagrees with Hershey's decision to end his employment. An employee's mere assertion that he disagrees with his employer's decision is insufficient to survive summary judgment. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 386 (3d Cir. 1999) ("[P]laintiff cannot rely on a showing that 'the employer's decision was wrong or mistaken' because the focus of the factual dispute is 'whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.'"); *see also Proudfoot v. Arnold Logistics, LLC*, 59 F. Supp. 3d 697, 705 (M.D. Pa. 2014), *aff'd*, No. 14-4703, 2015 WL 5881530 (3d Cir. Oct. 8, 2015). The law does not permit employees and courts to second-guess legitimate business decisions.

---

admitted in his deposition that he had no evidence to prove retaliation and was merely speculating).

Moreover, Mr. Divkovic's misuse of his FMLA was not an inadvertent mistake. The designation notice that Mr. Divkovic received for his FMLA family leave clearly stated that the intended purpose of the leave was to allow him to transport his wife to her IVF appointments. SOF ¶ 35. As someone who had taken FMLA leave several times before, Mr. Divkovic understood the significance of that designation notice and how it described the qualifying uses of his FMLA family leave. If he had any questions about the permissible uses of his FMLA family leave, he should have sought clarification from Hershey's Absence Management team promptly after receiving his designation notice, but he did not.

In sum, the record establishes beyond genuine dispute that Hershey had an honest belief that Mr. Divkovic did not use his approved FMLA family leave for its intended purpose. Thus, Defendants are entitled to summary judgment on Mr. Divkovic's FMLA retaliation claim as well.

### C. Defendants Are Entitled to Summary Judgment on Divkovic's ADA and PHRA Claims (Counts 1-6).[3]

Under the ADA and Pennsylvania Human Relations Act (PHRA), the Complaint alleges claims of failure-to-accommodate, disability discrimination, retaliation, and hostile work environment. Each of these claims is without merit.

---

[3] "The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds." *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 142 (3d Cir. 2011).

   **1.**  **Mr. Divkovic's failure-to-accommodate claim fails as a matter of law because he admittedly received the only accommodation he requested.**

A plaintiff bringing an ADA failure-to-accommodate claim must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps*, 847 F.3d at 157. In the Complaint, Mr. Divkovic admitted that Hershey placed him on a 40-hour per week work restriction as requested by his doctor. Compl. ¶¶ 15-16. He also admitted in his deposition that Hershey granted this accommodation request. SOF ¶ 24.

Mr. Divkovic did not mention making any other ADA accommodation requests in the Complaint or his deposition (because there were none). Given that Hershey granted his only accommodation request, summary judgment should be granted to dismiss Mr. Divkovic's failure-to-accommodate claim. *See, e.g.*, *Pierce-Schmader v. Mount Airy Casino & Resort*, No. 3:13-cv-1141, 2014 WL 8106125, at *13 (M.D. Pa. Nov. 20, 2014) (finding that plaintiff could not establish a prima facie case of disability discrimination due to a failure to accommodate when the employer provided plaintiff with her requested accommodations).

### 2.    Mr. Divkovic's disability discrimination and retaliation claims fail for the same reasons as his FMLA retaliation claim – he cannot prove causation or pretext.

Mr. Divkovic's claims of disability discrimination and retaliation follow the same *McDonnell Douglas* framework that is applicable to his FMLA retaliation claim. *Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 344 (M.D. Pa. 2015). To establish a prima facie case for his disability retaliation claims, Mr. Divkovic must demonstrate that (i) he engaged in a protected activity; (ii) he suffered an adverse employment decision; and (iii) the adverse decision was causally connected to his invocation of his rights. *Cunningham v. Novo Nordisk*, No. 12–6654, 2014 WL 1318390, at *11 (E.D. Pa. Apr. 1, 2014).

It is not clear from the Complaint what Mr. Divkovic considers to be his protected activity under the ADA because he has not alleged (nor can he) that he ever complained about disability discrimination. To the extent Mr. Divkovic is asserting that his accommodation request is the protected activity, the significant temporal gap between when he made that request (July 2020 (SOF ¶ 24)) and his termination on May 25, 2021, undermines any inference of causation. *See, e.g.*, *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (holding that five-month period between employee's protected activity and first adverse action was, without additional evidence, insufficient to raise an inference of causation). Further, as

discussed above, the undisputed evidence supporting Hershey's termination decision also precludes causation.

For his disability discrimination claim, Mr. Divkovic must present admissible evidence that: (1) he had a "disability" within the meaning of the Act; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he was terminated because of his disability. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998). Even assuming Mr. Divkovic was disabled, there is no evidence to suggest that Hershey terminated his employment because of such disability. Indeed, there is no evidence to reflect that Mr. Niceswander (*i.e.*, the Employee Relations investigator who recommended termination) had any knowledge of Mr. Divkovic's accommodation request. *See Straining v. AT&T Wireless Servs., Inc.*, 144 F. App'x 229, 232 (3d Cir. 2005) (rejecting disability discrimination claim where the individual making the decision to take the adverse employment action had no knowledge of plaintiff's alleged disability).

Finally, for both the discrimination and retaliation claims, assuming arguendo that he can meet the prima facie requirements, Mr. Divkovic would still need to set forth evidence to demonstrate that Hershey's legitimate reasons for terminating him were pretext for disability discrimination and/or retaliation. As set forth above, Mr. Divkovic cannot meet this burden.

Similar to the FMLA case law referenced above, courts have held that employers are not liable under the ADA when they have an "honest belief" that the employees at issue engaged in misconduct. *See, e.g.*, *Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 630 (E.D. Pa. 2017) (granting summary judgment dismissal of ADA disparate treatment claims where employer had an honest belief that employee engaged in misconduct); *White v. Stroh Brewery Co.*, 15 F. Supp. 2d 734, 739 (E.D. Pa. 1998) ("Thus, under the ADA, an employer's honest belief is critical; it is not liable under a disparate treatment framework because its decisions and suspicions happen to work to the disadvantage of a member of a protected group. Liability results only if the employer intends to disadvantage an individual precisely because he belongs to a protected group."). Thus, Mr. Divkovic's disability discrimination and retaliation claims under the ADA and PHRA should be dismissed.

> **3.    Mr. Divkovic's hostile work environment claim fails as a matter of law because he was not subjected to severe and pervasive treatment on the basis of his disability or any other reason.**

To establish a prima facie case of hostile work environment based on disability, a plaintiff must show:  (1) he is a qualified individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to

create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt effective remedial action. *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999). A plaintiff must demonstrate that his work environment is "objectively hostile or abusive, and the plaintiff must have perceived it as a hostile or abusive environment." *Id.*

Courts determine whether an environment is objectively "hostile" or "abusive" by considering the totality of circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Casual, isolated, or sporadic comments or incidents are insufficient." *Taggart v. Verizon Del. LLC*, No. 10-669, 2013 WL 456406, at *6 (D. Del. Feb. 1, 2013); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."). "Rather, the plaintiff must show that she was subjected to continuous and repeated acts of harassment." *Taggart*, 2013 WL 456406, at *6; *see also Nicholson v. City of Clarksville*, 530 F. App'x 434, 444 (6th Cir. 2013) (holding that four isolated instances in which employees used racial slurs,

"while inappropriate and offensive," were not sufficient to create a racially hostile work environment).

Mr. Divkovic's hostile work environment claim is premised entirely on the interview conducted by Mr. Niceswander on May 18, 2021, during the investigation into his FMLA misuse. *See* Compl. ¶¶ 18-34. Mr. Divkovic admitted in his deposition that he enjoyed working for Hershey prior to that interview.

> Q. So you liked working at Hershey up until that meeting in May?
>
> A. ***Yes, I liked the people. I liked working there***.
>
> Q. Would you go back if they offered you another job?
>
> A. That is a question. I don't know how to answer that. They have been good to me for the most part. ***I loved working there.*** I think certain things. If they really want to sit down at least with me and have clarification and have a meeting and work something out, figure out what the issue is and see if there is accommodation and work something out. But nobody really cared or came up to me or wanted to talk to me about anything. Nobody cared. And everything caught me really off guard. ***But yes, I did enjoy working there and it was a good job***. Yes.

SOF ¶ 73 (Divkovic Dep. 78:16-79:9 (emphasis added)).

With regard to the May 2021 interview, Mr. Divkovic believes that Mr. Niceswander harassed him by asking him questions about how he used his FMLA family leave and regarding his wife's IVF treatments which were the medical reasons for that leave. Compl. ¶¶ 21-25. Even assuming those allegations are true, that is not enough to form the basis for a hostile work environment claim.

As noted above, there is no evidence to suggest that Mr. Niceswander had any knowledge about Mr. Divkovic's purported disability. Accordingly, Mr. Divkovic cannot even establish that any purported harassment that he suffered from Mr. Niceswander was based on his disability or accommodation request.

Furthermore, Mr. Divkovic cannot demonstrate that any of the alleged harassment he experienced was sufficiently severe or pervasive to alter the terms and conditions of his employment. Courts consistently have found that conduct much more objectively egregious than what Mr. Divkovic alleges is not sufficient to meet the severe or pervasive requirement for a hostile work environment claim. *Grassmyer v. Shred–It USA, Inc.*, 392 F. App'x. 18, 25, 30 (3d Cir. 2010) (affirming summary judgment for employer where plaintiff's allegations that her manager regularly made comments about the size of his genitalia and about the details of his sexual relationships and that he referred to women as "b--hes" were not "so 'severe or pervasive' as to support a hostile work environment claim"); *Cooper–Nicholas v. City of Chester*, No. 95-6493, 1997 WL 799443, at *3 (E.D. Pa. Dec. 30, 1997) (granting summary judgment because approximately eight incidents of "unprofessional, offensive, and callow" remarks over the course of nineteen months was not sufficiently "frequent or chronic" to create a hostile work environment). Given that Mr. Divkovic's own admissions demonstrate that his hostile work environment claim is based on allegations of conduct that cannot be based on any

protected trait and is not objectively severe or pervasive, this claim should be dismissed as well.[4]

### D.    Defendants Are Entitled to Summary Judgment on Mr. Divkovic's GINA Disability Claim (Count 9).

GINA provides that "[i]t shall be an unlawful practice for an employer . . . to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of the employee, because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1). Although the Third Circuit has not confirmed a standard for evaluating GINA claims, its sister circuits apply the *McDonnell Douglas* burden-shifting framework to GINA claims. *See, e.g.*, *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 827 (5th Cir. 2015) (affirming district court's "borrowing" of *McDonnell Douglas* burden-shifting framework for GINA); *Punt v. Kelly Servs.*, 862 F.3d 1040, 1052 (10th Cir. 2017) (applying *McDonnell Douglas Douglas* framework to GINA claim).

Thus, Mr. Divkovic's GINA discrimination claim fails for the same reasons that his disability discrimination and retaliation claims fail. He cannot demonstrate

---

[4] Because Mr. Divkovic's claims of retaliation, discrimination, and hostile work environment fail, his claims against individual Defendant Kristi Umberger for aiding and abetting under the PHRA also fail as a matter of law. "For liability to be imposed on an aiding and abetting theory . . . there must be a cognizable predicate offense, *i.e.*, a violation . . . of the [law's] primary anti-discrimination provision." *Lombard v. Lassip, Inc.*, No. 17-964, 2017 WL 6367956, at *5 (E.D. Pa. Dec. 13, 2017).

that Hershey's legitimate reason for terminating his employment was caused by any protected trait or activity or that it was pretext for discrimination or retaliation.

Mr. Divkovic's GINA claim also fails because the information he allegedly disclosed as the basis for his GINA claim was not "genetic information" as defined by GINA. As is relevant here, "genetic information" means information about an "individual's genetic tests" or "the genetic tests of that individual's family members"; or "the manifestation of disease or disorder in family members of the individual (family medical history)." *See* 29 C.F.R. § 1633(c). Genetic tests include, for example, tests to determine whether a person has a predisposition to breast cancer; carrier tests to determine the risk of conditions such as cystic fibrosis, sickle cell anemia, spinal muscular atrophy, or fragile X syndrome in future offspring; amniocentesis or newborn screening; or genetic diagnosis performed on embryos. 29 C.F.R. § 1633(f). Mr. Divkovic disclosed no information regarding any genetic test performed on himself or his wife.

The regulations promulgated pursuant to GINA state that "[a] covered entity shall not be considered to be in violation of this part based on the use, acquisition, or disclosure of medical information that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member, even if the disease, disorder, or pathological condition has or may have a genetic basis or component." 29 C.F.R. § 1635.12. The Equal Employment Opportunity

28

Commission (EEOC) has noted that GINA does not protect individuals discriminated against on the basis of impairments that have only a genetic basis. *See Background Information for EEOC Final Rule on Title II of the Genetic Information Nondiscrimination Act of 2008*, U.S. EEOC, http://www.eeoc.gov/laws/regulations/gina-background.cfm (last accessed Mar. 29, 2023). Instead, the EEOC explains that "GINA is concerned primarily with protecting those individuals who may be discriminated against because an employer thinks they are at increased risk of acquiring a condition in the future." *Id.*

In the present case, Hershey did not obtain "genetic information" from Mr. Divkovic. First, none of the interview questions or Mr. Divkovic's responses addressed any information about Mr. Divkovic's own health conditions. Despite his vague assertion to the contrary, it appears Mr. Divkovic bases this claim on the information he disclosed about his wife during the May 18, 2021 interview. Compl. ¶ 116. That Mrs. Divkovic was undergoing IVF and taking related medications was the only disclosure regarding any "condition." Although information about an individual's fertility necessarily has a "genetic component," such information does not fall into GINA's definition of "genetic information," as this information does not implicate the individual's (here, Mr. Divkovic's) increased risk of acquiring a condition in the future.

**E.     Defendants Are Entitled to Summary Judgment on Mr. Divkovic's Common Law Claim of Intrusion Upon Seclusion (Count 10).**

Mr. Divkovic's intrusion upon seclusion claim is based solely on his allegation that Mr. Niceswander asked improper and personal questions during the investigation interview on May 18, 2021. Compl. ¶ 126. In particular, Mr. Divkovic alleges that Mr. Niceswander should not have asked him questions about his wife's IVF treatments. In *Vogel v. W. T. Grant Co.*, 327 A.2d 133, 136 n.9 (Pa. 1974), the Pennsylvania Supreme Court recognized the invasion of privacy tort of intrusion upon seclusion as adopted in the tentative draft of the Restatement (Second) of Torts, which provides that this tort requires proof of the following:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable [person].

Restatement (Second) of Torts § 652B.

Accordingly, to prevail on this *intentional* tort, Mr. Divkovic needs to establish that Mr. Niceswander "believe[d], or [was] substantially certain, that he lack[ed] the necessary legal or personal permission to commit the intrusive act." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989). He also has to demonstrate that the alleged intrusion would be highly offensive to a reasonable person. Mr. Divkovic cannot satisfy either requirement.

First, it is undisputed that Mr. Niceswander believed he was acting within the scope of his employment (and was in fact doing so) when he conducted the investigation interview of Mr. Divkovic.  SOF ¶ 58.  Indeed, Mr. Divkovic admitted that he knew Mr. Niceswander was a Hershey employee acting within the scope of his employment during the interview.  *Id*.  This reason alone is sufficient to grant summary judgment against Mr. Divkovic's intrusion upon seclusion claim.  *See, e.g.*, *Canada v. Samuel Grossi & Sons, Inc.*, 476 F. Supp. 3d 42, 64-65 (E.D. Pa. 2020) (granting summary judgment on intrusion upon seclusion claim where the evidence showed that at the time plaintiff's supervisor searched his cell phone, she "believed she had the legal authority to do so as she thought she was searching a company cellphone"); *O'Donnell*, 891 F.2d at 1083 (affirming summary judgment on intrusion upon seclusion claim where defendant believed it had permission to engage in the disputed conduct and plaintiff offered no evidence to the contrary).

This claim also should be dismissed because the questions Mr. Niceswander asked about Mrs. Divkovic's IVF treatments during the interview at issue would not be considered highly offensive to a reasonably objective person under the given circumstances.  Specifically, Mr. Divkovic placed his wife's IVF treatments at issue when he used those treatments as a basis to obtain the FMLA family leave that Mr. Niceswander was tasked with investigating.  No reasonable person would offer information about such IVF treatments to obtain FMLA leave, and then find

questions about such treatments from his employer to be highly offensive. *See e.g.*, *Horgan v. Simmons*, 704 F. Supp. 2d 814, 822 (N.D. Ill. 2010) (dismissing claim of intrusion upon seclusion where employee voluntarily disclosed his HIV positive diagnosis and his employer asked him specific questions about his prognosis); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (holding a plaintiff cannot have a reasonable expectation of privacy if he consented to the intrusion and that, if consent is present, it is unlikely the defendant's conduct was "highly offensive to a reasonable person"); *cf Truong v. Dart Container Corp.*, No. 09-3348, 2010 WL 4611980, at *5 (E.D. Pa. Nov. 12, 2010) (granting motion to dismiss intrusion upon seclusion claim as workers' compensation claimant should have expected a reasonable investigation into her claims where it was reasonable for the employer to ascertain the validity of those claims).

### F. Defendants are Entitled to Summary Judgment on Mr. Divkovic's Common Law Claim of Negligent Supervision (Count 11).

Mr. Divkovic's negligent supervision claim is also based upon the alleged conduct of Mr. Niceswander during the investigation interview on May 18, 2021. A negligent supervision claim requires a plaintiff to demonstrate that his employer "(1) fail[ed] to exercise ordinary care to prevent an intentional harm by an employee acting *outside the scope of his employment* (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and

ability to control the employee." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487-88 (3d Cir. 2013) (emphasis added).

Mr. Divkovic's negligent supervision claim fails as a matter of law because he cannot establish the underlying intentional harm (*i.e.*, the intrusion upon seclusion claim). This claim also fails because it is undisputed that Mr. Niceswander was acting within the scope of his employment when conducting the interview at issue. SOF ¶ 58.

**G. Even if Mr. Divkovic's Claims Are Not Dismissed, the Court Should Find that Mr. Divkovic's Damages Are Limited Pursuant to The After-Acquired-Evidence Doctrine.**

The after-acquired-evidence doctrine applies in certain circumstances to limit the amount of damages available to a plaintiff. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 359-60, 362-63 (1995). The doctrine applies where the employer establishes (1) that the employee committed misconduct, and (2) that the misconduct was severe enough that, had the employer known about it at time of actual discharge, it would have in fact terminated the employee for that reason alone. *Id.* at 363. If an employer proves that the doctrine applies, reinstatement and front pay become inappropriate, and, absent extraordinary circumstances, back-pay is limited to the period between the unlawful discharge and the date the new information was discovered. *Id.*; *Paneto v. CWork Sols., LP*, No. 18-CV-1794, 2020 WL 7027588, at *9-10 (M.D. Pa. Nov. 30, 2020) (applying after-acquired-evidence

doctrine on motion for summary judgment to limit plaintiff's remedies); *E.E.O.C. v. Rose Casual Dining, L.P.*, No. 02-7485, 2004 WL 614806, at *9-10 (E.D. Pa. Mar. 5, 2004) (same).

On June 21, 2022, during the course of discovery in this matter, Hershey learned of information regarding Mrs. Divkovic's IVF treatment schedule that would have given the company even more grounds to terminate Mr. Divkovic for misuse of his FMLA family leave. *See* SOF ¶¶ 74-85. Specifically, the medical records confirmed that Mrs. Divkovic only required a driver on ***one day*** during the entire duration of her IVF treatment. SOF ¶ 85.

Furthermore, the records refuted Mr. Divkovic's explanation that he used his FMLA family leave to prepare and deliver injections to his wife. This is because the records show that, after February 14, 2021, Mrs. Divkovic required ***no IVF injections during her or Mr. Divkovic's work hours*** (because they worked on the same shift) and, in fact, she had specifically chosen medications that could be injected in the morning before her shift when given the option. SOF ¶¶ 77-84. The records also show that Mr. Divkovic continued to take FMLA family leave for several days ***after his wife got pregnant***, even though he admitted in his deposition that his wife did not need him to take FMLA leave once she got pregnant. SOF ¶ 82.

While the after-acquired-evidence doctrine is typically applied when defendants discover information that provides an entirely different basis for terminating the plaintiff's employment, this doctrine arises out of the Court's discretion to provide equitable relief. *McKennon*, 513 U.S. at 360-62 (describing the equitable basis for the after-acquired-evidence doctrine to limit damages when evidence of a plaintiff's misconduct is discovered in litigation).

Here, the record establishes beyond genuine dispute that Hershey had an honest belief that Mr. Divkovic did not use his FMLA family leave for its intended purpose. That honest belief has been unquestionably confirmed through the medical records and deposition testimony that Hershey obtained during the course of this litigation from Mrs. Divkovic's fertility doctor. For these reasons, if any of Mr. Divkovic's claims are permitted to proceed to trial (though they should not be), Defendants respectfully request that the Court exercise its discretion to provide equitable relief and grant summary judgment on Defendants' after-acquired-evidence defense to find that any damages awarded to Mr. Divkovic should be limited to June 21, 2022, when Defendants first obtained these medical records.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Summary Judgment in its entirety and deny Plaintiff any relief. If any question arises as to the propriety of the dismissal of this action,

Defendants request the opportunity to present an oral argument in support of their position.

Dated: March 31, 2023                  Respectfully submitted,

                                 */s/ Eric C. Kim*
Michael J. Puma (ECF User)
Eric C. Kim (ECF User)
1701 Market St.
Philadelphia, PA 19103
215.963.5000
michael.puma@morganlewis.com
eric.kim@morganlewis.com

*Counsel for Defendants*

## WORD COUNT CERTIFICATION

In compliance with the Court's Order granting Defendants' leave to file a brief in excess of the word limit contained in Local Rule 7.8 of up to 9,000 words, Defendants certify that this brief contains 8,526 words, inclusive of footnotes.

                                 */s/ Eric C. Kim*
Eric C. Kim