IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VELIBOR DIVKOVIC.<br><br>Plaintiff,<br><br>vs.<br><br>THE HERSHEY COMPANY, et al<br><br>Defendants. | Case No. 21-CV-1947<br><br>Hon. J. Wilson |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Velibor Divkovic ("Plaintiff") by undersigned counsel, respectfully submits this brief in opposition to Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court should deny the Defendants' Motion.

**I.      RELEVANT PROCEDURAL HISTORY**

Plaintiff commenced his employment action on November 16, 2021 (Doc. 1). Defendants filed an Answer on January 24, 2022 (Doc. 11). On January 24, 2023, the Court issued an Amended Case Management Order (Doc 28). The Order provided that dispositive motions and supporting briefs must be filed by March 31, 2023. Defendants filed a Motion for Summary Judgment on March 31, 2023, to which the Plaintiff now responds.

II.   **STATEMENT OF MATERIAL FACTS**

Plaintiff incorporates by reference his Counter Statement of Material Facts ("CSOF") as provided to the Court with his brief in opposition.

III.   **ARGUMENT**

Summary judgment is granted if the movant shows no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law, Fed.R.Civ.P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dept of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence allows a reasonable jury to find for the nonmoving party. *Id*. Further, a court's role is not to weigh the evidence; and all reasonable inferences and doubts should resolve in favor of the nonmoving party. *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

> A. **There are material facts in dispute on Plaintiff's FMLA Interference claim where the Defendants terminated the Plaintiff for misuse of his FMLA leave due to not following the physician's certification and the Defendants failed to permit the Plaintiff to recertify his certification**.

Initially, there are material facts in dispute as to whether the Plaintiff misused his FMLA. Plaintiff claims he prepared shots for his spouse and brought them to her work for injection. Further, when using his FMLA it was to care for his spouse (CSOF 7, 14). Once more, Dr. Kara Khanh-Ha D. Nguyen ("Dr. Nguyen" - pronounced "Dr. Wen") Plaintiff and his wife's IVF medical provider, stated that shots, ultrasounds, monitoring, blood work and office visits were required (CSOF

2

30). However, Defendants claim Plaintiff was only permitted to transport his wife to doctors' appointments (CSOF 35). This dispute creates an issue of fact regarding whether the Plaintiff's physician certification permitted him to prepare shots and carry them to his wife for injection in the parking lot at work. If not, then the Defendants should have asked the Plaintiff to recertify the leave to determine if the certification included preparing shots and additional care.

In *Calio v. Camden Cnty. Bd. of Chosen Freeholders*, 19-8393 (RMB/AMD), at *13-14 (D.N.J. August 6, 2021), there was a factual dispute about whether the Defendant had requested a recertification before disciplining the Plaintiff. The *Calio Court* cited to a Seventh Circuit case, *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 842 (7th Cir. 2014) noting that the frequency and duration in a certification cannot be used to deny, or otherwise interfere with FMLA leave that an employee would be entitled to, and exceeding these certified frequencies or durations triggers the recertification provisions, *Id*. Furthermore, if the employee is asked to recertify but fails to do so, the leave is no longer considered FMLA leave, 29 C.F.R. § 825.313(c). The *Calio Court* further stated that if the Defendant in that case never properly asked Calio to recertify, then his absences would be protected under the FMLA and the Defendant would not be able to discipline him for taking these protected absences, *Calio* 19-8393 (RMB/AMD), at *7.

To succeed on an FMLA interference claim, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits, *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir.2007). Here, Defendants concede the Plaintiff was entitled to FMLA (CSOF 29-33) but claim they did not deny him any benefits. However, Dr. Nguyen, stated that Plaintiff's wife would require estrogen and progesterone shots for three (3) more weeks past April 29, 2021, and that Plaintiff's wife would have to come to the office for pregnancy hormone blood work and ultrasounds which would have been for a total of nine (9) gestational weeks, meaning the last shot was slated for May 21, 2021. Furthermore, Dr. Nguyen and her staff kept in contact with the Plaintiff and his wife to discuss precautions for her first trimester pregnancy in late April 2021 and through late May 2021 (CSOF 30, 32). However, due to Plaintiff's suspension on May 18, 2021, and his subsequent termination on May 25, 2021, he was denied the use of his FMLA to take his wife to office visits and provide additional support with remaining injections and blood tests during the final weeks of the IVF plan. Because Defendants took action to deny Plaintiff's leave to enjoy the period after his wife's conception, and during a critical phase of care in her first trimester when precautions must be taken, Defendant prejudiced the Plaintiff during what should have been a very joyous occasion.

**B. There are material facts in dispute on Plaintiff's FMLA Retaliation claim where the Defendants terminated the Plaintiff for misuse of his FMLA leave due to not following the physician's certification and the Defendants failed to permit the Plaintiff to recertify his certification. In the alternative, the Plaintiff presents material facts in dispute on causation**.

The same reasoning as found in the interference argument applies to the Plaintiff's retaliation claim. That is, because the Defendants failed to provide the Plaintiff with the opportunity to recertify his leave, after allegations of misuse based upon the physician certification, there are material facts in dispute about whether there should have been a recertification and whether they retaliated against him when they fired him without providing him that opportunity, *Calio*, 19-8393 (RMB/AMD), at *13-14. Once more, the Plaintiff has articulated a temporal proximity and a period of antagonism existed during the investigation into the alleged misuse of FMLA, *see Abramson v. Wm. Paterson College of N.J.*, 260 F.3d 265, 288 (3d Cir.2001). *See also*, *Williams v. Philadelphia Hous. Auth. Police Dept.*, 380 F.3d 751, 760 (3d Cir.2004).

Here, the Plaintiff was brought into a room and placed on a zoom call to discuss his use of FMLA. In that meeting, the Plaintiff objected to the treatment he was receiving and the line of questioning regarding his FMLA usage, which he states was very personal and trying to go in circles about his use of leave (CSOF 7). Further, Plaintiff had been using protective leave for 26 days from the 2/1/2021 to 5/10/2021 and Plaintiff was suspended only 8 days after he had last used FMLA

protected leave on 5/10/21. Furthermore, Plaintiff was terminated within <u>15</u> days of his last use of FMLA protected leave.

Critically, Plaintiff was suspended the same day he objected to the harassment he was experiencing from Tory Niceswander ("Niceswander") the Employment Relations Investigator for Hershey (CSOF 56-57). Further, Niceswander, drafted a script for the investigation well before the investigation was held, and in which language was included discussing whether Plaintiff had recertified his personal FMLA leave. Yet, the Plaintiff was never asked to recertify leave for his wife's care (CSOF 56-57). Once more, and tellingly, the notes Niceswander created *prior to the investigatory meeting* had language in them that stated the Plaintiff would be suspended (CSOF 33, 34, 50, 56-58) this, before the meeting had even been conducted. This, showing the retaliatory animus of the Defendants (emphasis added). Consequently, this creates both, a temporal proximity to the time of termination (15 days from last FMLA use) as well as a pattern of antagonism (5/17/2021 and before, when the notes containing language regarding suspension were created, to Plaintiff's termination a few days later on 5/25/2021) which is evidence that is unusually suggestive of retaliation, *Abramson,* 260 F.3d at 288. *See also*, *Murray v. UHS of Fairmount, Inc*., Civil Action No. 10-2561, at *26 (E.D. Pa. November 10, 2011).

The Defendants argue they had an honest belief that Plaintiff had misused his FMLA. However, the facts, as more fully described above, demonstrate that there is no such honest belief. First, Niceswander drafted notes *before* the meeting and in those notes he added language regarding the suspension of the Plaintiff. Thus, there are facts in dispute about whether Niceswander, acting as an investigatory agent for Defendants, had pre-determined that he would be disciplining the Plaintiff before an investigation was conducted (emphasis added). This was not a good faith investigation based on an honest belief, but a prearranged ambush to interrogate the Plaintiff in an effort to obtain a confession of wrongdoing (CSOF 50). By the way, a new father to be who was doing everything in his power to see that his wife became pregnant and was able to keep their baby.

Next, LaQuita Gary ("Gary") Director of Employee Relations and Compliance at Hershey, also drafted an email from a post investigatory meeting with the Plaintiff, the day after he alleged his privacy was being violated and he was being harassed (CSOF 56-57; 60). In her notes she posits that the Plaintiff claimed HIPAA and privacy violations, but that he should have gone to the doctor handling his FMLA certification, to obtain clarity on the certification, and to help him support his needs. However, and significantly, Gary never speaks to any member of the absence management team or anyone else for that matter, including the Plaintiff, about seeking recertification for his FMLA usage. Especially given the fact that the

7

Plaintiff informed her he had only a limited time left where he and his wife were trying to handle medical issues in relation to IVF (CSOF 56-57; 60).

In *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 153 (3d Cir. 2017) cited by the Defendants, the Court stated that the Defendant there had an honest belief that the Plaintiff was misusing his FMLA leave and affirmed the decision of the lower court. However, in *Capps*, the Defendant permitted the Plaintiff to provide letters to clarify or recertify his usage of leave before it made the decision to terminate the Plaintiff. The Plaintiff's case here is distinguishable from *Capps*, as in the Plaintiff's case he was accused of misusing his FMLA because he had stated he was using the time off to obtain phone calls from the doctor's office, receive blood test reports, and obtain the timing of IVF shots. He would then mix shots for his wife and carry them to her work for injection in the parking lot (CSOF 50, 55, 58-60). When Niceswander conducted his investigation, he never investigated whether the Plaintiff had indeed brought medications to the Plaintiff's wife, stating that he did not find it credible, *Id*. Furthermore, he never checked security records, or checked with anyone else for that matter, he simply wrote it off as a lie, *Id*.

Once more, there was no attempt made by the Defendants to seek a recertification of the original FMLA physician certification of the Plaintiff given the dispute of what the FMLA was being used for, *Id*. Finally, although Gary asked the Plaintiff why he did not check with his doctors if he knew the FMLA certification did not

8

allow him to use it for bringing medications to his wife, who was unable to stay home from work herself, as noted, Gary never raised the recertification issue with absence management, human resources, or anyone else before the Plaintiff was fired.

Additionally, in *Capps*, the Defendants had taken steps to surveil and permit ample time for the Plaintiff to obtain physician clarification prior to making a decision, based on an honest belief. There was no honest belief in the instant case, only a rush to judgment based on a shoddy investigation that never fully vetted whether the claims of the Plaintiff had any credence. Therefore, Plaintiff has proven that the intention of the Defendants in the instant matter was retaliatory.

### C. **There are material facts in dispute regarding whether the Defendants Retaliated against the Plaintiff due to his prior requests for workplace accommodations**.

The Plaintiff had sought and received accommodation as to a 40-hour work week, as well as FMLA for himself claiming he was recertifying for the same in about two months (CSOF 50, 54). Plaintiff was terminated within <u>7</u> days of raising the issue of seeing his doctor again to recertify his FMLA, and consequently, his workplace accommodation for the same. Thus, there are material facts in dispute regarding whether the Defendant retaliated against the Plaintiff due to his seeking to renew his workplace accommodations, *see Watson v. Drexel Univ.*, No. 20-3001, at *9 (3d Cir. Sep. 27, 2021) (holding that a request for FMLA leave may qualify as a

request for a reasonable accommodation under the ADA. See 29 C.F.R. § 825.702(c)(2); see also, *Capps*, 847 F.3d at 144.

> **D. There are material facts in dispute regarding whether the Defendants violated the Genetic Information Nondiscrimination Act ("GINA") when they engaged in questioning in the investigatory meeting that went outside the scope of what is permissible under the FMLA, and the inquisition discussed Plaintiff's IVF treatment and medications and Plaintiff was terminated thereafter**.

GINA prohibits employers from acquiring genetic information of an employee *or of an employee's family member*, 42 U.S.C. §§ 2000ff-1(b); *see also Cox v. United Parcel Serv*., Civil Action 21-cv-5166 (E.D. Pa. Jan. 12, 2022). Title II of GINA prohibits genetic-information discrimination in employment, See 42 U.S.C. § 2000ff-1(a)). "Genetic information" means, with respect to any individual, information about: "(i) such individual's genetic tests, (ii) *the genetic tests of family members of such individual*, and (iii) the manifestation of a disease or disorder in family members of such individual." *Id*. § 2000ff(4)(A); 29 C.F.R. § 1635.3(c)" *Cox*, Civil Action 21-CV-5166, at *5. Here, there are material facts in dispute regarding whether Niceswander engaged in questioning beyond the scope of the FMLA delving into private information regarding the medications being mixed and used for Plaintiff and his wife's IVF treatments (CSOF 55-60) (emphasis added).

Furthermore, while there is an exception under GINA for seeking relevant data as per the FMLA, *See Background Information for EEOC Final Rule on Title II of the Genetic Information Nondiscrimination Act of 2008*, U.S. EEOC,

10

http://www.eeoc.gov/laws/regulations/gina-background.cfm (last accessed Mar. 29, 2023) as cited by the Defendants, there are material facts in dispute regarding whether Niceswander went outside the scope of the FMLA and any GINA exception.

> **E. There are material facts in dispute regarding whether the Defendants violated the Plaintiff's right to privacy when they engaged in questioning in the investigatory meeting that went outside the scope of what is permissible under the FMLA, and the inquisition discussed Plaintiff's and his wife's IVF treatments and medications.**

Here, there are material facts in dispute regarding whether Niceswander engaged in questioning beyond the scope of the FMLA delving into private information regarding the medications mixed and used for Plaintiff and his wife's IVF treatments (CSOF 55-60). Once more, the Plaintiff clearly did not consent to the questioning, as Niceswander and Gary themselves confirm (CSOF 55-60). Furthermore, the Third Circuit has concluded that an actor commits an intentional intrusion if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act, *O'Donnell v. U.S.*, 891 F.2d 1079 (3d Cir. 1989). Here, there is no evidence that Niceswander knew or believed he had permission to engage in questioning regarding IVF treatments and medications the Plaintiff and his wife used to help in her pregnancy. In fact, Nicewander disputes that he ever discussed anything about medications and refused to say what questions he asked, as he couldn't recall (CSOF 50). Critically, however, Gary was asked to investigate harassment and whether Niceswander had asked private and personal

11

questions which violated HIPAA (CSOF 55-60). However, in doing so, Gary, who was supposed to be trained in HIPAA, and in fact, was the 30B6 deponent for Hershey in that regard, could not confirm whether asking about where the Plaintiff's wife took shots on her body, or about what kind of medications were used, was a HIPAA violation. Thus, it is easily inferred here that there are material facts in dispute about whether Niceswander intentionally raised questions which were outside the scope of what was permitted, i.e., IVF medications, mixing meds and where Plaintiff's wife was given shots (CSOF 8, 14).

In *Horgan v. Simmons*, 704 F. Supp. 2d 814, 820 (N.D. Ill. 2010) as cited by the Defendants, the *Horgan Court* stated that the ADA prohibits "inquiries of an employee as to whether [an] employee is an individual with a disability, or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4). In the *Horgan* case, the Plaintiff alleged that the Defendant demanded to know whether "something medical [was] going on" and "continued to insist there was something physical or mental that was affecting [Plaintiff]." Plaintiff claims that based on this questioning he was "compelled to tell (the Defendant) that he was HIV positive." *Id.* Further, the Defendant allegedly asked Plaintiff about his prognosis and what would happen if his T-cell count fell below 200. According to the *Horgan Court*, that line of questioning constituted an impermissible inquiry, citing to *Coffman v.*

*Indianapolis Fire Dep't*, 578 F.3d 559, 565 (7th Cir. 2009). Here, Niceswander claimed the Plaintiff shared information about medications and the mixing of the same, however, like *Horgan*, the real issue is whether the Defendants were permitted to engage in an impermissible line of questioning in the first instance or encourage or coach the Plaintiff to discuss sensitive and highly private matters. The Plaintiff asserts the answer is that these were impermissible inquiries, and properly trained management would know this. Therefore, the Plaintiff has demonstrated that there are material facts regarding whether these questions were permissible, intentional, and thus violative of the Plaintiff's privacy.

> **F. There are material facts in dispute regarding whether the Defendants were negligent when they permitted agents of the Defendants, and the Defendants themselves, to engage in questioning in the investigatory meetings that went outside the scope of what is permissible under the FMLA, and the inquisition discussed Plaintiff's IVF treatment and medications**.

As more fully noted above, and incorporated herein by reference, there are material facts in dispute about whether Defendants, including Niceswander, allowed impermissible inquiries of the Plaintiff while in the investigatory meetings on May 18-19, 2021. The Defendants have a HIPAA policy that forbids such inquiries (CSOF 50-55), and which presents a specific duty to protect a worker's rights in this regard. The Defendants breached that duty by allowing impermissible inquisitions of a new father to be, regarding deeply private and medical information. Further, the Defendants knew this was inappropriate because they sent the Plaintiff to Gary the

13

next day for investigation of his complaints of privacy violations including HIPAA. Thus, there are material facts in dispute regarding whether the Defendants exercised ordinary care to prevent these inquisitions. Furthermore, there are also material facts in dispute regarding whether the Defendants, including Niceswander, acted within the scope of their employment, especially because Niceswander created investigatory notes the investigatory meeting and made changes well after the meeting. These notes included language regarding the Plaintiff's suspension. Thus, the "investigation" was a sham process, or the same may be easily inferred.

> **G. There are material facts in dispute regarding whether the Plaintiff misused his FMLA and whether the alleged misuse was severe enough to warrant termination. Further whether Plaintiff's wife's medical records are supported by the testimony of Dr. Nguyen**.

Defendants' argument here is premised upon the notion that there are no material facts in dispute as to the issue of whether the Plaintiff committed misconduct so severe that the Defendants would have terminated him for that misconduct, *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 359-60, 362-63 (1995). Because there remain questions of material fact regarding the issue of Plaintiff's alleged misconduct, as well as the issue of whether the Plaintiff used FMLA for something other than what he was authorized for, this instruction is of no consequence at this time. Once more, the failure to provide opportunity to recertify once there was a question of whether the Plaintiff should be using FMLA for reasons other than transportation, defeats the notion of misuse of leave so severe it warranted

termination. Furthermore, there are questions of fact regarding whether the information in the medical records of the Plaintiff's wife is supported by the testimony of the Plaintiff's wife's physician, or merely impermissible hearsay.

## IV. CONCLUSION

For all the forgoing reasons, Plaintiff prays that this Honorable Court will deny the Defendants' Motion.

Respectfully Submitted,

Counsel for Plaintiff:

By: /s/*Jeremy A. Donham*
Jeremy A. Donham, Esquire
*Attorney for Plaintiff*
Supreme Ct. I.D. #206980
714 Venture Drive, Ste. 144
Morgantown, West Virginia 26508
(717) 881-7855 (888) 370-5177 fax
E-mail:  J.Donham@Donhamlaw.com