# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VELIBOR DIVKOVIC,

    Plaintiff,

vs.

THE HERSHEY COMPANY, KRISTI UMBERGER, INDIVIDUAL JOHN DOE 1, INDIVIDUAL JOHN DOE 2, INDIVIDUAL,

    Defendants.

Case No. 1:21-cv-01947-JPW

Hon. Jennifer P. Wilson

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Dated: April 21, 2023

Michael J. Puma (PA 94463)
Eric C. Kim (PA 316245)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: 215.963.5000
Fax: 215.963.5001
*Counsel for Defendants*

I.    **<u>INTRODUCTION</u>**

As set forth in Defendants' Opening Brief,[1] the evidence demonstrates that: (1) Mr. Divkovic's FMLA interference claim fails because he admitted that Hershey granted every single one of his FMLA requests, and it is duplicative of his FMLA retaliation claim; (2) his FMLA retaliation claim fails because Hershey had an honest belief that he was misusing his FMLA family leave; (3) his ADA, GINA, and PHRA claims fail because he cannot proffer any evidence of discrimination or retaliation; and (4) his intrusion upon seclusion and negligent supervision claims fail because he cannot prove that the alleged bad actor acted outside the scope of his employment to cause intentional harm.  Hershey also introduced medical records from Mrs. Divkovic's fertility doctor confirming that Mr. Divkovic took FMLA family leave on several days when Mrs. Divkovic *did not require any IVF treatments at all*.

Mr. Divkovic's Opposition confirms that Defendants' Motion for Summary Judgment should be granted because he fails to proffer any evidence that creates a genuine dispute of material fact.  Indeed, while his Opposition repeatedly claims that there are "disputes" that preclude summary judgment, Mr. Divkovic does not and cannot point to any evidence that actually contradicts any of Defendant's statements of material fact.  Moreover, Mr. Divkovic does not even attempt to address the

---

[1] *See* ECF 32 (cited as "Defs' Br.").  All capitalized and abbreviated terms defined in the Opening Brief have the same meaning herein.

numerous cases Defendants cited in their Opening Brief, nor does he cite to any case law that is on point.

For these reasons, the reasons set forth in Defendants' Opening Brief, and as explained in greater detail below, Defendants respectfully request that the Court grant the Motion for Summary Judgment and dismiss the case with prejudice.

## II.  ARGUMENT

### A.  Defendants Are Entitled to Summary Judgment on Mr. Divkovic's FMLA Interference Claim (Count 7).

In the Opening Brief, Defendants established that Mr. Divkovic's FMLA interference claim fails as a matter of law because (1) Hershey never denied any of his FMLA requests and (2) his interference claim is duplicative of his FMLA retaliation claim. Defs' Br. at 5-8. Mr. Divkovic does not dispute these grounds for dismissal of his interference claim, nor does he attempt to distinguish the cases Defendants cite in support of their position, because he cannot.

Instead, Mr. Divkovic argues that (1) "there are material facts in dispute as to whether the Plaintiff misused his FMLA" and (2) Hershey should have allowed Mr. Divkovic to recertify his FMLA family leave. Plaintiff's Opposition Brief ("Pl's Br."), ECF 35, at 2-4. However, just saying that there are material facts does not make it so. Moreover, those arguments fail to address the fact that Mr. Divkovic *admitted* that Hershey granted every single one of his FMLA leave requests (SOF ¶

14)² and that his interference claim is duplicative of his FMLA retaliation claim – both of which provide independent bases to dismiss the interference claim. In any event, his arguments are baseless.

First, whether Mr. Divkovic actually misused his FMLA leave is not material for purposes of this motion. The Third Circuit and numerous other courts have held that FMLA claims should be dismissed on summary judgment if the employer had an honest belief that an employee did not use his or her FMLA leave for its intended purpose. *See* Defs' Br. at 12-14 (collecting cases). In other words, even if the Court were to assume that Mr. Divkovic did not misuse his FMLA family leave (though he did), the key issue is whether Defendants had an honest belief that he misused his leave. *See, e.g.*, *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 154-55 (3d Cir. 2017) (holding that although an employee claimed his employer was mistaken about his FMLA use, there was a lack of evidence that the employer did not honestly hold its belief that the employee misused his FMLA leave).

Notably, *Capps* is the *only* case cited by Defendants that Mr. Divkovic attempts to distinguish. In doing so, he misrepresents the holding from that case by claiming that it is not applicable because "the Defendant permitted the Plaintiff to provide letters to clarify or recertify his usage of leave before it made the decision

---

² *Citing* D16, 40:4-11 ("Q. So you are not claiming that the company wrongfully denied any FMLA requests? A. ***No. They approved everything***." (emphasis added)).

to terminate the Plaintiff." Pl's Br. at 8. However, *Capps* simply noted that before suspecting the plaintiff of misusing his FMLA leaves, the defendant granted and recertified the plaintiff's FMLA requests multiple times. 847 F.3d at 148. The defendant did not allow the plaintiff to recertify his FMLA leave after suspecting his misuse of the leave. The defendant actually suspended the plaintiff immediately upon confronting him about how his FMLA leaves coincided with court appearances for a DUI conviction, and then terminated his employment. *Id.* at 149. The Third Circuit found the termination was permissible because the employer had an honest belief that the plaintiff misused his FMLA leaves, just like the present case. *Id.*

Second, Defendants did not have an obligation to allow Mr. Divkovic to recertify his FMLA family leave once he admitted he did not use it for its intended purpose. None of the numerous opinions Defendants cited on the honest belief doctrine held that employers must first let employees attempt to recertify their FMLA leave before taking disciplinary action for the misuse of such leave. The two opinions Mr. Divkovic cited in support of this specious argument, *Calio* and *Hansen*, are clearly distinguishable. Both cases address situations where employees exceeded the approved frequency or duration of their FMLA leaves. *See generally Calio v. Camden Cnty. Bd. of Chosen Freeholders*, No. 19-8393, 2021 WL 3464879 (D.N.J. Aug. 6, 2021); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832 (7th Cir. 2014). Neither *Calio* nor *Hansen* dealt with employees like Mr. Divkovic,

4

who did not exceed the amount of approved FMLA leaves, but rather used those leave days for purposes that were not approved in their FMLA designation notice. This distinction between employees *exceeding* the approved amount of FMLA leave and *misusing* their FMLA leave is significant.

As explained in *Hansen*, FMLA certification forms ask healthcare providers to provide "the *estimated* frequency and duration" of the medical condition requiring leave. 763 F.3d at 834. The court opined that because the amount of approved FMLA leave is based on an "estimate," employees who exceed their approved FMLA usage should be given an opportunity to recertify and adjust the amount of leave as needed. *Id.* at 840-43. The intended *purpose* of an FMLA leave, on the other hand, is not based on an estimate. Employees either use their FMLA leave for its approved purpose, or they do not. And if employers honestly believe that employees are misusing their leave, as is the case with Mr. Divkovic, they are entitled to take disciplinary actions, including termination. Def's Br. at 12-14.

Moreover, the *Hansen* opinion acknowledged that if an employee "'far exceeded the amount of her medically permitted FMLA leave,'" disciplinary action is permissible. 763 F.3d at 841 (quoting *Harville v. Texas A&M Univ.*, 833 F. Supp. 2d 645 (S.D. Tex. 2011) (granting dismissal of FMLA claims where employee was terminated for excessively exceeding approved FMLA leave, and the employer did not request recertification before doing so). In the present case, Hershey did not

5

terminate Mr. Divkovic's employment for misuse of just a few FMLA family leave days. There is no genuine dispute that out of the approximately 30 FMLA family leave days that Mr. Divkovic took between February and May 2021, he took over 20 days off for reasons other than the approved purpose of transporting Mrs. Divkovic to her IVF appointments. *See* SOF ¶¶ 42, 44. Thus, Mr. Divkovic's rampant misuse of his FMLA family leave "far exceeded" what his FMLA notice permitted, like the basis for termination recognized in *Hansen*.

### B. Defendants Are Entitled to Summary Judgment on Mr. Divkovic's FMLA Retaliation Claim (Count 8).

Mr. Divkovic does not dispute that his FMLA retaliation claim should be reviewed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, Defendants demonstrated that Mr. Divkovic cannot show any causation between his FMLA leaves and his termination to assert a *prima facie* case for retaliation. This is because Mr. Divkovic's prior use of FMLA leave multiple times since 2018 – without any effect on his employment – undermines any inference of retaliation. Defendants also established that even if Mr. Divkovic could make a *prima facie* case, Hershey proffered a legitimate non-retaliatory reason for his termination (an honest belief in his misuse of FMLA family leave), and Mr. Divkovic cannot meet his burden to show that the reason is pretext for retaliation. Defs' Br. at 8-19.

As an initial matter, Mr. Divkovic's brief does not address the cases Defendants cite, which hold that any inference of retaliation is negated when an employee has taken FMLA leave on several occasions without any effect on his employment. Defs' Br. at 10-11. Mr. Divkovic instead continues to assert that Hershey should have permitted him to recertify his FMLA family leave. Pl's Br. at 5, 8. Again, that argument is not supported by any relevant law, and it essentially is a further admission that Mr. Divkovic used the leave for reasons other than the approved purpose. In short, Mr. Divkovic simply disagrees with Hershey's decision to end his employment, which is not enough to survive summary judgment. Defs' Br. at 18 (citing *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 386 (3d Cir. 1999) ("[P]laintiff cannot rely on a showing that 'the employer's decision was wrong or mistaken' because the focus of the factual dispute is 'whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.'")).

Next, Mr. Divkovic claims that there are "material facts in dispute on causation" but he does not identify any specific factual dispute. Instead, he asserts the following allegations to claim that there is causation and that Hershey did not have an honest belief in his misuse of FMLA leave:

- "Plaintiff was suspended only <u>8</u> days after he had last used FMLA protected leave on 5/10/2021." Pl's Br. at 6 (emphasis in original).

7

- "Plaintiff was suspended the same day he objected to the harassment he was experiencing from Tory Niceswander" during his interview with Mr. Niceswander. *Id.*

- "[T]he notes Niceswander created *prior to the investigatory meeting* had language in them that stated the Plaintiff would be suspended . . . before the meeting had even been conducted." *Id.* (emphasis in original).

Mr. Divkovic does not cite to any cases in which similar facts were found sufficient to establish causation or pretext for an FMLA retaliation claim because he cannot do so.[3] With regard to his allegations about the timing of events, it is beyond genuine dispute that Mr. Niceswander's investigation into Mr. Divkovic's use of FMLA leave began well before his last day of FMLA leave on May 10, 2021 or his "harassment" complaint during their interview. SOF ¶ 47 (undisputed that the investigation into Mr. Divkovic's FMLA use began on April 30, 2021). Thus, the events leading up to Mr. Divkovic's suspension and termination began *before* the protected activities he claims as the bases for his retaliation claim. *See, e.g.*,

---

[3] Specifically, his brief relies on *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265 (3d Cir. 2001) and *Est. of Murray v. UHS of Fairmount, Inc.*, No. 10-2561, 2011 WL 5449364 (E.D. Pa. Nov. 10, 2011) to claim that the timing of events and Mr. Niceswander's conduct establishes a "pattern of antagonism." Pl's Br. at 6. However, in *Abramson*, the plaintiff proffered deposition testimony from multiple individuals and documents reflecting that the plaintiff's managers and colleagues treated her differently immediately after her complaint of discrimination over the course of several weeks. 260 F.3d at 287-89. Here, the purported "pattern of antagonism" consists solely of Mr. Divkovic's allegation that Mr. Niceswander "harassed" him during *one* meeting on May 18, 2021. And in *Murray*, the court actually granted summary judgment and dismissed the plaintiff's FMLA and ADA retaliation claims, finding that the plaintiff could not meet her burden to establish pretext. 2011 WL 5449364, at *11-12.

*Kilpatrick v. Shulkin*, No. 16-1193, 2017 WL 4273615, at *8 (E.D. Pa. Sept. 26, 2017), *aff'd sub nom.* 754 F. App'x 123 (3d Cir. 2018) (holding no causal nexus existed where the investigation that led to plaintiff's termination began before he engaged in protected activity).

Next, Mr. Divkovic's allegation about the "notes" that Mr. Niceswander purportedly created before their interview blatantly misrepresents the deposition testimony cited to support it. In the portion of Mr. Niceswander's deposition Mr. Divkovic cited for this allegation (s*ee* Plaintiff's Counterstatement of Facts, ECF 34, at ¶ 50, citing Ex. G, 47:7-48:18), Mr. Niceswander actually testified as follows:

> A: And did you draft the fact that [Plaintiff] would be suspended before the investigation?
>
> Q: I drafted the script, yes. ***I did not draft the fact that he would be suspended***. As I previously stated, this is a script and this does not have bearing on whether they're suspended or not.

Pl's Ex. G, ECF 35-10, 47:7-13 (emphasis added).

In any event, even assuming Mr. Niceswander did decide to suspend Mr. Divkovic before the interview (which he clearly did not), that would not demonstrate that he had retaliatory animus. The record reflects that Mr. Niceswander reviewed the relevant FMLA documentation and absence records for Mr. and Mrs. Divkovic prior to the interview. SOF ¶¶ 47-48. Thus, Mr. Niceswander's investigation already uncovered enough evidence to support an honest belief that Mr. Divkovic had been misusing his FMLA family leave well before interviewing him.

9

Mr. Niceswander ultimately recommended that Hershey terminate Mr. Divkovic's employment based on several undisputed facts, including:

- Hershey granted Mr. Divkovic's request for FMLA family leave for the sole purpose of allowing him to transport Mrs. Divkovic to her IVF appointments, consistent with the certification provided by her doctor. SOF ¶¶ 32, 35.

- The undisputed absence records for Mr. Divkovic and Mrs. Divkovic reflect that Mr. Divkovic took over 20 days of FMLA family leave to purportedly take his wife to her IVF appointments on days when that could not be true because she actually worked full shifts at Hershey. SOF ¶ 42.

- During his interview with Mr. Niceswander, Mr. Divkovic admitted that he did not use all of his FMLA family leave to transport his wife to her IVF appointments, and instead claimed that he used those days to prepare medications for her. SOF ¶¶ 52-53.

- When asked how long it took to prepare those medications, Mr. Divkovic stated that it took approximately 30 minutes, so he could have come to work afterwards, but he still took *full days* off. SOF ¶ 54. Moreover, Mr. Divkovic claimed that Mrs. Divkovic needed these medications every day, but Mr. Divkovic took FMLA family leave only sporadically.

These facts, along with the other evidence proffered by Defendants in support of this Motion, reflect that Hershey had an honest belief that Mr. Divkovic misused his FMLA family leave to miss work over 20 times between February to May 2021.

Mr. Divkovic does not dispute that it is his burden to proffer sufficient evidence to show that Hershey's articulated reason for terminating his employment was pretext for retaliation. He also does not dispute that to meet this burden, his evidence must "either (i) discredit[] the proffered reasons, either circumstantially or directly, or (ii) adduc[e] evidence, whether circumstantial or direct, that

10

discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). This requires Mr. Divkovic to not only demonstrate that Hershey's proffered reason is wrong, but "so plainly wrong that it cannot have been the real reason [for the termination].'" *Naber v. Dover Healthcare Assocs., Inc.*, 765 F. Supp. 2d 622, 639 (D. Del. 2011), *aff'd*, 473 F. App'x 157 (3d Cir. 2012). Mr. Divkovic cannot meet this burden, so his FMLA retaliation claim fails as a matter of law.

### C. Defendants Are Entitled to Summary Judgment on Divkovic's ADA and PHRA Claims (Counts 1-6).

Mr. Divkovic's Opposition Brief confirms that his ADA and PHRA claims should also be dismissed. As an initial matter, Mr. Divkovic does not dispute that his failure-to-accommodate and hostile work environment discrimination claims (Counts 1, 2, 4, and 5) should be dismissed, effectively conceding to Defendants' arguments. *Cicchiello v. Beard*, 726 F. Supp. 2d 522, 531 (M.D. Pa. 2010), *aff'd sub nom.*, 458 F. App'x 117 (3d Cir. 2012) (holding that failure to address a claim in opposition to summary judgment is an abandonment of the claim).

The only ADA and PHRA claims Mr. Divkovic addresses are his disability retaliation claims. However, he does not present any evidence specific to those claims that warrants deviating from the FMLA retaliation analysis. Thus, the disability retaliation claims also fail because he cannot establish causation or that Hershey's legitimate reason for terminating him was pretext for retaliation.

**D.  Defendants Are Entitled to Summary Judgment on Mr. Divkovic's GINA Disability Claim (Count 9).**

Defendants established that Mr. Divkovic's GINA discrimination claim fails for the same reasons that his disability discrimination and retaliation claims fail. Defendants also demonstrated that the GINA claim fails for the additional fact that the information Mr. Divkovic disclosed as the basis for his GINA claim was not "genetic information" as defined by GINA.  Defs' Br. at 27-28.  Mr. Divkovic's Opposition Brief does not proffer any evidence to dispute Defendants' position. Instead, he notes that GINA has an exception for disclosures required by the FMLA, and then asserts that "there are material facts in dispute regarding whether Niceswander went outside the scope of the FMLA and any GINA exception."  Pl's Br. at 10-11.  That exception is irrelevant because Mr. Divkovic never disclosed any genetic information.

**E.  Defendants Are Entitled to Summary Judgment on Mr. Divkovic's Common Law Claim of Intrusion Upon Seclusion (Count 10).**

Mr. Divkovic does not dispute that his intrusion upon seclusion claim requires him to prove that the alleged bad actor (Mr. Niceswander) believed he was acting unlawfully to cause harm, and that the intrusion would be offensive to a reasonable person.  To that end, Defendants showed that Mr. Niceswander believed he was acting within the scope of his employment when he questioned Mr. Divkovic about

his use of FMLA leave, and that those questions would not be highly offensive to a reasonable person. Defs' Br. at 30-32.

Mr. Divkovic does not and cannot proffer any evidence to dispute those facts. For example, while Mr. Divkovic claims that "there is no evidence that Niceswander knew or believed he had permission to engage in questioning regarding IVF treatments," he cannot genuinely dispute that his FMLA family leave concerned those IVF treatments and that Mr. Niceswander investigated that FMLA use as part of his employment with Hershey. *See* SOF ¶¶ 53-54, 58. Indeed, Mr. Divkovic *admitted* that he knew Mr. Niceswander was a Hershey employee acting within the scope of his employment during the interview. SOF ¶ 58. Mr. Divkovic also attempts to create a factual dispute by alleging that Ms. Gary did not adequately investigate his "harassment" complaint against Mr. Niceswander, but that is irrelevant because Ms. Gary is not the person who allegedly intruded upon his seclusion. Moreover, Mr. Divkovic cannot cite to any case law to support his position. Instead, he attempts to distinguish the *Horgan* opinion cited by Defendants. Pl's Br. at 12. But, in that case, the court *dismissed* the intrusion upon seclusion claim, even though the employee made disclosures about his private medical diagnosis, because the employee made those disclosures voluntarily and the questioning was not unreasonably intrusive, just like the present case. *Horgan v. Simmons*, 704 F. Supp. 2d 814, 822 (N.D. Ill. 2010).

F.   **Defendants Are Entitled to Summary Judgment on Mr. Divkovic's Common Law Claim of Negligent Supervision (Count 11)**.

Mr. Divkovic's negligent supervision claim fails as a matter of law because he cannot establish the underlying intentional harm (*i.e.*, the intrusion upon seclusion claim). As Defendants have demonstrated, Mr. Divkovic fails to demonstrate a material dispute regarding whether Mr. Niceswander was acting outside the scope of his employment to intentionally harm him.

G.   **Even if Mr. Divkovic's Claims Are Not Dismissed, the Court Should Find That Mr. Divkovic's Damages Are Limited Pursuant to the After-Acquired-Evidence Doctrine**.

Mr. Divkovic does not dispute that the after-acquired-evidence doctrine limits damages where an employee committed misconduct that the employer would have deemed terminable if the employer had known of the misconduct at the time of actual discharge. Defendants explained that the doctrine applies here because Mrs. Divkovic's medical records obtained during this litigation clearly demonstrate that Mr. Divkovic's FMLA leave misuse was even more egregious than Hershey's investigation revealed. Defs' Br. at 33-35. In response, Mr. Divkovic argues that there are disputed issues of fact regarding the severity of his misconduct. Pl's Br at 14-15. The record establishes beyond any genuine dispute that Hershey had an honest belief that Mr. Divkovic did not use his FMLA family leave for its intended purpose, and that honest belief was unquestionably confirmed through the medical records and deposition testimony of Dr. Nguyen. Given that Hershey deemed the

14

known FMLA leave abuse a terminable offense, it follows that Hershey would have deemed this greater extent of FMLA leave abuse a clearly terminable offense.

Mr. Divkovic also suggests that the medical records are either not supported by Dr. Nguyen's testimony or that the records are hearsay. While the medical records speak for themselves, Dr. Nguyen testified that all of Mrs. Divkovic's contacts and appointments with Dr Nguyen's office would have been reflected in these medical records. *See* Pl's Br., Ex. F at 70:1-3. Mr. Divkovic cites no testimony to the contrary. Finally, it is blackletter law that statements made for medical diagnosis and treatment are excepted from the rule against hearsay. Fed. R. Evid. 803(4); *see also United States v. Gonzalez*, 905 F.3d 165, 199-200 (3d Cir. 2018).

### III. **CONCLUSION**

For the reasons stated above and in the Opening Brief, Defendants respectfully request that this Court grant their Motion for Summary Judgment in its entirety and deny Plaintiff any relief.

Dated: April 21, 2023     Respectfully submitted,

*/s/ Eric C. Kim*
Michael J. Puma (ECF User)
Eric C. Kim (ECF User)
1701 Market St.
Philadelphia, PA  19103
215.963.5000
michael.puma@morganlewis.com
eric.kim@morganlewis.com

*Counsel for Defendants*

15

## **CERTIFICATE OF SERVICE**

I, Eric C. Kim, hereby certify that on April 21, 2023, a true and correct copy of the foregoing was served upon all counsel of record by electronic filing with the Clerk of the United States District Court for the Middle District of Pennsylvania and is available for viewing and downloading from the ECF system.

*/s/ Eric C. Kim*
Eric C. Kim
